Reads J.
 

 The violence complained of would without question have constituted a battery if the subject of it had not been the defendant’s wife. The question is how far that fact affects the case.
 

 ' The courts have been loth to take cognizance of trivial complaints arising out of the domestic relations — such as master and apprentice, teacher and pupil, parent and child, husband and wife. Not because those relations are not subject to the law, but because the evil of publicity would be greater than the evil involved in the trifles complained of; and because they ought to be left to family government. On the civil side of this court, under our divorce laws, such cases have been unavoidable, and not unfrequent. On the criminal side there are but two cases reported. In one the question was, whether the wife was a competent witness te prove a battery by the husband upon her, which inflicted no great or permanent injury. It was decided that she was
 
 *455
 
 not. In discussing the subject the court said, that the abstract question of the husband’s right to whip his wife did not arise.
 
 State
 
 v. Hussy, Busb. 123. The other case was one of a slight battery by the husband upon the wife after gross provocation. He was held not to be punishable. In that case the court said, that unless some permanent injury be inflicted, or there be an excess of violence, or such a degree of cruelty as shows that it is inflicted to gratify his own bad passions, the law will not invade the domestic forum, or go behind the curtain.
 
 State
 
 v.
 
 Blade,
 
 1 Winst., 266. Neither of those cases is like the one before.us. The first case turned upon the competency of the wife as a witness, and in the second there was a slight battery upon a strong provocation.
 

 In this case no provocation worth the name was proved. The fact found was that it was “without any provocation except some words which were not recollected by the witness.” The words must have been of the slightest import to have made no impression on the memory. We must therefore, consider the violence as unprovoked. The question is therefore plainly presented, whether the court will allow a conviction of the husband for moderate correction of the wife without provocation.
 

 Our divorce laws do not compel a separation of husband and wife, unless the conduct of the husband be so cruel as to render the wife’s condition intolerable, or her life burdensome. What sort of conduct on the part of the husband, would be allowed to have that effect, has been repeatedly considered. And it has not been found easy to lay down any iron rule upon the subject. In some cases it has been held that actual and repeated violence to the person, was not sufficient. In others that insults,' indignities and neglect without any actual violence, were quite sufficient. So much does each case depend [upon its peculiar surroundings.
 

 
 *456
 
 We have sought the aid of the experience and wisdom of other times, and of other countries.
 

 Blackstone says “that the husband, by the old law, might give the wife moderate correction, for as he was to answer for her misbehavior, he ought to have the power to control her; but that in the polite reign of Charles the Second, this power of correction began to be doubted.” 1 Black., 444. Wharton says, that by the ancient common law the husband possessed the power to chastise his wife; but that the tendency of criminal courts in the present day, is to regard the marital relation as no defence to a battery. Cr. L., sec. 1259-60. Chancellor Walworth says of such correction, that it is not authorized by the law of any civilized country; not indeed meaning that England is not civilized, but referring to the anomalous relics pf barbarism which cleave to her jurisprudence. Bish. M. & D., 446, n. The old law of moderate correction has been questioned even in England, and has been repudiated in Ireland and Scotland. The old rule is approved in Mississippi, but it has met with but little favor elsewhere in the United States.
 
 Ibid.
 
 485. In looking into the discussions of the other States we find but little uniformity.
 

 From what has been said it will be seen how much the subject is at sea. And, probably, it will ever be so: for it will always be influenced by the habits, manners and condition of every community. Yet it is necessary that we should lay down something as precise and practical as the nature of the subject will admit of, for the guidance of our courts.
 

 Our conclusion is that family government is recognized by law as being ás complete in itself as the State government is in itself, and yet subordinate to it; and that we will not interfere with or attempt to control it, in favor of either
 
 *457
 
 husband or wife, unless in cases where permanent or malicious injury is inflicted or threatened, or the condition of the party is intolerable.-'-F'or, however great are the evils of ill temper, quarrels, and even personal conflicts inflicting only temporary pain, they are not comparable with the evils which would result from raising the curtain, and exposing to public curiosity and criticism, the nursery and the bed chamber. Every household has and must have, a government of its own, modelled to suit the temper, disposition and condition of its inmates. Mere ebullitions of passion, impulsive violence, and temporary pain, affection will soon forget and forgive; and each member will find excuse for the other in his own frailties. But when trifles are taken hold of by the public, and the parties are exposed and disgraced, and each endeavors to justify himself or herself by criminating the other, that which ought to be forgotten in a day, will be remembered for life. —■
 

 It is urged in this case, that as there was no provocation the violence was of course excessive and malicious; that every one in whatever relation of life should be able to purchase immunity from pain, by obedience to authority and faithfulness in duty. And it is insisted, that in the
 
 State
 
 v.
 
 Pendegrass, 2 D. &
 
 B., 365, which was the case of a schoolmistress whipping a child, that doctrine is laid down. It is true that it is there said, that the master may be punishable even when he does not transcend the powers granted;
 
 i.
 
 e., when he does not inflict permanent injury, if he grossly abuse his powers, and use them as a cover for his malice. But observe, the language is, if, he
 
 grossly
 
 abuse his powers. So that every one would say at once, there was no cause for it, and it was purely malicious and cruel. If this be not the rule then every violence which would amount to an assault upon a stranger, would have to be investigated to see whether there was any provocation. And that would con
 
 *458
 
 travene what we have said, that we will punish no case of trifling importance. If in every such case we are to hunt for the provocation, how will the proof be supplied? Take the case before us. The witness said, there was no provocation except some slight words. But then who can tell what significance the trifling words may have had to the husband ? Who can tell what had happened an hour before, and every hour for a week ? To him they may have been sharper than a sword. And so in every case, it might be impossible for the court to appreciate what might be offered as an excuse, or no excuse might appear at all, when a complete justification exists. Or, suppose the provocation could in every case be known, and the court should undertake to weigh the provocation in every trifling family broil, what would be the standard? Suppose a case coming up to us from a hovel, where neither delicacy of sentiment nor refinement of manners is appreciated or known. The parties themselves would be amazed, if they were to be held responsible for rudeness or trifling violence. What do they care for insults and indignities? In such cases what end would be gained by investigation or punishment? Take a case from the middle class, where modesty and purity have their abode-but nevertheless have not immunity from the frailties of nature, and are sometimes moved by the mysteries of passion. What could be more harassing to them, or injurious to society, than to draw a crowd around their seclusion. Or take a case from the higher ranks* where education and culture have so refined nature, that a look cuts like a knife, and a word strikes like a hammer; where the most delicate attention gives pleasure, and the slightest neglect pain; where an indignity is disgrace and exposure is ruin. Bring all these cases into court side by side, with the same offence charged and the same proof made; and what conceivable charge of the court to the jury would be alike appropriate
 
 *459
 
 to all the cases, except, That they all have domestic government, which they have formed for themselves, suited to their own peculiar conditions, and that those governments are supreme, and from them there is no appeal except in cases of great importance requiring the strong arm of the law, and that to those governments they must submit themselves.
 

 It will be observed that the ground upon which we have put this decision, is not, that the husband has the
 
 right
 
 to; whip his wife much or little; but that we will not interfere; with family government in trifling cases. We will no more interfere where the husband whips the wife, than where the wife whips the husband; and yet we would hardly be supposed to hold, that a wife has a
 
 right
 
 to whip her husband. We will not inflict upon society the greater evil of raising the curtain upon domestic privacy, to punish the lesser evil of trifling violence. Two boys under fourteen years of age fight upon the play-ground, and yet the courts will take no notice of it, not for the reason that boys have the
 
 right
 
 to fight, but because the interests of society require that they should be left to the more appropriate discipline of the school room and of home. It is not true that boys have a right to fight; nor is it true that a husband has a right to whip his wife. And if He had, it is not easily seen how
 
 the thumb
 
 is the standard of size for the instrument which he may use, as some of the old authorities have said; and in deference to which was his Honor’s charge. A light blow, or many light blows, with a stick lai'ger than the thumb, might produce no injury; but a switch half the size might be so used as to produce death. The standard is the
 
 effect produced,
 
 and not the manner of producing it, or the instrument used.
 

 Because our opinion is not in unison with the decisions of some of the sister States, or with the philosophy of some very respectable law writers, and could not be in unison with all, because of their contrariety, — a decent respect for
 
 *460
 
 the opinions of others has induced us to be very full in .stating the reasons for our conclusion. There is no error. Let this be certified, &c.
 

 Per Curiam. No error.