STATE v. J. T. EDENS.

*Assault—Husband and Wife—Indictment—Slander.*

1. A husband is not indictable for slandering his wife.

2. A husband is not indictable for an assault upon his wife unless it put life or limb in peril, or other permanent injury to the person is inflicted, or where it is prompted by a malicious and revengeful spirit.

3. *It seems*, that in an indictment for slander, under §1113 of *The Code*, it is not necessary to set forth the words spoken with the same particularity as is required in complaints in civil actions. It is only necessary to allege that they, "in substance," charged the female with incontinency.

(*State* v. *McDaniel*, 84 N. C., 803; *State* v. *Aldridge*, 86 N. C., 680; *Manning* v. *Manning*, 79 N. C., 293, cited and approved).

INDICTMENT, tried before *Meares, Judge*, and a jury, at September Term, 1886, of NEW HANOVER Criminal Court.

The defendant was tried at the September Term, 1886, of the Criminal Court of New Hanover county, upon the charge of slandering the character of an innocent woman in violation of §1113 of *The Code*. The indictment was in the following form:

" The jurors for the State, upon their oath, present that J. T. Edens, on the first day of April, 1886, at and in the county aforesaid, attempting wantonly and maliciously to injure and destroy the reputation of one Addie Edens, being an innocent and virtuous woman, did, by words spoken, declare, in substance, that the said Addie Edens was an in-continent woman, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

The State proved that the defendant used language of the most vulgar and indecent character, which, in substance, was a direct and unmistakable charge of incontinency against the woman in question, who was his wife, from whom he had separated.

The defendant admitted that he had used language amounting to a charge of incontinency against his wife, but attempted to justify upon the ground that she was not an innocent woman, and that before their marriage she had had sexual intercourse with other men.

The defendant and his wife were married in July, 1886, and he separated from her in a few days thereafter.

The defendant requested the Court to instruct the jury that as a matter of law, a husband cannot slander the reputation of his wife.

This instruction was refused, and the Court charged the jury that, if they were satisfied beyond a reasonable doubt that the prosecutrix was a virtuous or innocent woman, inasmuch as the language had been admitted by the defendant, that they ought to convict him. The defendant excepted.

After verdict of guilty, the defendant submitttd a motion in arrest of judgment, upon the ground that the bill of indictment does not set forth the language nor the substance of the language alleged to have been used by the defendant, and upon which the charge is based. This motion was overruled, and judgment being pronounced, the defendant appealed.

*Attorney-General,* for the State.
*Mr. John D. Bellamy,* for the defendant.

SMITH, C. J. (after stating the facts). We do not find it necessary to pass upon the form of the indictment and the effect of its omission to state slanderous language imputed, or to aver that it was uttered in the hearing and presence of any one, both of which are required to be averred in a com-. plaint in a civil action, since we propose to dispose of the appeal upon the ruling to which the first exception is taken, with the remark that similar forms of indictment have been heretofore before the Court and acted on without objection for these alleged defects. *State* v. *McDaniel,* 84 N. C., 803; *State* v. *Aldridge,* 86 N. C., 680.

Can an indictment be sustained against the husband for charging the wife with incontinency? At common law verbal slander was not the subject of a criminal prosecution, and is now a misdemeanor only in the case of the imputation of a want of virtue in an innocent woman made in a wanton and malicious attempt to destroy her reputation.

Does the enactment embrace those sustaining marital relation, or is its operation confined to those not thus related?

The changes made in the Constitution of 1868, and the enactments in pursuance of its provisions in reference to married women, are directed to the preservation and disposal of property, as separate estate, but do not materially affect the personal relations of the parties except as incidental to property and its use. This right she may assert against her husband as well as against a stranger, now in an action at law, as is decided in *Manning* v. *Manning,* 79 N. C., 293. But we think it manifest that she cannot maintain an action against him and recover damages for an injury to her person or good name, for these are inconsistent with the legal status resulting from marriage. In New York, under a statute authorizing any married woman to sue in her

own name and recover damages against any person or body corporate for an injury to her person or character, and that money so recovered should be her separate estate, it was held that she could not sue her husband for an assault and battery or slander. "These words," says Mr. Bishop, in the second volume of his work on the Law of Married Women, §377, "it was admitted, are broad enough to cover these actions; but on the other hand, the policy and general purpose of the statutes extending the rights of married women are opposed, and they must prevail over general words plainly introduced for another purpose. It has been deemed, however, that the policy of the law is against extending the authority of wives to sue their husbands."

This reasoning applies with equal force to the construction of our own law, and excepting those of marital relations from its comprehensive scope, including all others. It may be suggested that an indictment might lie, while an action for damages would not, as in case of the assault and battery of the wife by the husband. But it is not correct to say that such an indictment may in all cases be maintained. It is only where the battery is so great and excessive as to put life and limb in peril, or where permanent injury to the person is inflicted, or where it is prompted by a malicious and wrongful spirit, and not within reasonable bounds, that the law interposes to punish. In other cases, short of these extremes, it drops the curtain upon scenes of domestic life, preferring not to take cognizance of what transpires within that circle, to the exposure of them in a public prosecution. It presumes that acts of wrong committed in passion will be followed by contrition and atonement in a cooler moment, and forgiveness will blot it out of memory. So, too, the harsh and cruel word that sends a pang to the sensitive heart may be recalled, and relations that should never have been interrupted by an unkind or unwarranted expression, again restored. The unnumbered mischiefs that might flow

from making an unguarded and false imputation upon the wife's chastity the subject of a public criminal proceeding, are so obvious that we cannot think the General Assembly intended such a possible result.   Not only might this destroy the freedom and cordiality of marital intercourse, but it would tend to make a perpetual estrangement and severance, and cut off the reconciliation that may be expected to succeed a temporary difference and the atonement of a full repentance.   Our law regards the marriage relation sacred and permanent, life-long in its duration, and it leaves temporary differences and wrongs which one may do to the other to the corrective hands of time and reflection, in cases where they admit this remedy.   We are not disposed, in carrying out the policy of separate properties, to break in needlessly upon that oneness of husband and wife, which is the fundamental and cherished maxim of the common law, by extending the act beyond all the beneficent purposes it was intended to subserve, to cover cases of slander.

The judgment cannot be arrested, because the woman is not described in the indictment as wife of the defendant, but the jury ought to have been instructed, upon the evidence, to acquit.

The verdict must be set aside and a *venire de novo* awarded. Error.                                    Reversed.