## STATE v. FULTON.

(Filed 25 November, 1908).

1. **Husband and Wife—Slander—Indictment of Husband.**
   · Held by CLARK, C. J., and WALKER and CONNOR, JJ.: A husband is indictable, under Revisal, sec. 3640, if he wantonly and maliciously slander his wife. (*State v. Edens*, 85 N. C., 522, is overruled).

2. **Same.**
   Held by WALKER, J., that by reason of the decision in *State v. Edens, supra,* the bill against defendant herein was properly quashed, though offenders will be punishable. (Following *State v. Bell*, 136 N. C., 674).

3. **Same.**
   Held by BROWN and HOKE, JJ., the bill herein was properly quashed, because a husband who slanders his wife is not indictable under Revisal, sec. 3640, as heretofore held in *State v. Edens.*

4. **Same.**
   The judgment of the Superior Court quashing the bill is affirmed.

ACTION heard by *Webb, J.,* March Term, 1908, of GUILFORD, brought by the State against the defendant for slandering Carrie Fulton, his wife, under sec. 3640 of the Revisal of 1905.

Before pleading the defendant, through his attorneys, moved to quash the bill of indictment for the reason that no offence was charged, it not being a criminal offence for a hus-

band to slander his wife. His Honor sustained the motion, quashed the bill of indictment, and the State appealed.

*Assistant Attorney-General Clement, Shaw & Hines, W. P. Bynum, Jr.,* and *Justice & Broadhurst* for the State.

*David Stern, King & Kimball* and *W. F. Carter* for defendant. .

BROWN, J. It is admitted by the learned counsel for the State that this Court has long since decided that a husband is not indictable for slandering his wife under our statute, *State v. Edens,* 95 N. C., 693, and we are asked to overrule that decision.

It was in 1886 that the eminent jurists who occupied this bench at that time held, unanimously, that our statutory enactment creating the offence of slandering an innocent woman does not embrace those persons who sustain marital relations to each other, and that its operation is confined to those not thus related.

In speaking of the long established policy of the law as bearing upon the married relation, *Chief Justice Smith* eloquently says: "In other cases, short of these extremes, it drops the curtain upon scenes of domestic life, preferring not to take cognizance of what transpires within that circle, to the exposure of them in a public prosecution. It presumes that acts of wrong committed in passion will be followed by contrition and atonement in a cooler moment, and forgiveness will blot it out of memory. So, too, the harsh and cruel word that sends a pang to the sensitive heart may be recalled, and relations that should never have been interrupted by an unkind or unwarranted expression again restored. The unnumbered mischiefs that might flow from making an unguarded and false imputation upon the wife's chastity the subject of a criminal proceeding are so obvious that we cannot think the General Assembly intended such a possible result."

The decision made by a court composed of sages of the law who were as chivalrous as they were pure and learned, has become a part of the statute, and has been lived up to and acted upon since 1886.

For twenty-two years the General Assembly has acquiesced in such construction and thereby approved it. It is a well known fact that the last Legislature voted down a bill to change it.

The decision has been cited as authority and with approval in subsequent cases in this Court. *State v. Lewis,* 107 N. C., 972; *State v. Haddock,* 109 N. C., 873.

Whatever might be our impressions were the matter *res integra,* we deem it important in the construction of statutes to adhere to what has already been adjudged. The judicial interpretation becomes as it were a part of the statute itself.

This view of the case is presented very strongly by *Justice Walker* in *Hill v. R. R.,* 143 N. C., 574; *Ash v. Gray,* 90 N. C., 296; *Lockhart v. Bell,* 90 N. C., 500; Wells' Res Adjudicata, pp. 542, 543.

The judgment of our predecessors has abundant support in the decisions of other courts and in the text-books.

Mr. McLean, an approved writer on Criminal Law, sec. 1045, says: "A husband is not indictable for defaming his wife, and it has been so held in England, notwithstanding the Married Woman's Act."

In support of the text the author cites the decision of this Court in *State v. Edens, supra.*

There is a statute of New York, as broad and comprehensive as the one construed in *Edens' case,* which says: "Any married woman may maintain an action in her own name for damages against *any person,* for an injury to her person and character, the same as if she were sole."

It was insisted in *Freethy v. Freethy,* 42 Barb., N. Y., 641, that the words, "any person," are so comprehensive as to include the husband, and give the right to the plaintiff to

maintain an action for slander against the defendant, her husband.

The New York Court held that the Legislature did not intend by so general a statute to change the common law rule as to the disability of husband and wife to sue each other, saying that the evils to be remedied "are but trifling when compared with such as would result from the litigation between them of suits like the one in question. When the legislature intends to make such a striking innovation of the rules of the common law, and so much opposed to public policy and the peace and happiness of the conjugal relation, as would be the case if husband and wife were permitted to sue each other for alleged wrongs to character, it should use such language as will make it clearly manifest; and not leave it to the construction of the courts."

It is a rule of construction, generally recognized, that statutes should receive such interpretation as is agreeable to the rules of the common law in cases of that nature, for statutes are not presumed to alter the common law further than the act expressly declares. Bac. Abr., p. 243.

It is not enough that a case be within the letter of the statute, if it be not also within the intention and spirit of it. Numerous cases can be found in the books where an act came within the letter of the statute, but was declared not to be within its intention. 2 Bac. Abr., 249; 9 Bac. Abr., 250; 2 Inst., 384; *People v. Ins. Co.,* 15 John., 358; *White v. Wager,* 25 N. Y., 328.

It would be a legal anomaly to hold that the husband may be convicted and punished for slandering his wife, and that she could not sue and recover damages for the wrong done her.

The Married Woman's Act enacted by the English Parliament in 1882, 45 and 46 Vict. C., sec. 12, gives to a wife remedies by criminal proceedings for her protection, and the protection of her property. She can also sue in her own

name for torts and wrongs done to her.  Yet, the Queen's Bench held that a wife could not before, and cannot since the aforesaid act, take out criminal proceedings against her husband for defamatory libel.   The *Queen v. Lord Mayor,* 16 Q. B. Div. Law Rep., 772.

From the earliest times it has been held that the wife cannot be convicted for stealing her husband's goods, the reason being that husband and wife were considered but as one person in law.   1 Hale P. C., p. 514.   Upon this subject the Encyclopædia lays it down, that the common law unity of husband and wife operates equally to preclude either spouse from successfully maintaining actions for tort, such as slander and libel against the other.   15 Am. & Eng., 857.

By statute in many States 'the right is given to husband and wife to sue each other for injuries to property or rights growing out of property, but in such States no adjudications can be found, so far as we are advised, which authorize such actions for slander, libel and other similar torts.   15 Am. & Eng., 858.

There is another very cogent reason why the construction given this statute in the *Edens case* should be adhered to, and that is because the wife, whose character is at stake, cannot be permitted to testify against her husband upon the trial of the indictment.   It being an indictment against the husband, he has the right to offer himself as a witness in his own defence, and under oath justify the charges he has made, and he could testify to facts that would blast the wife's character if believed.   He could testify that he saw her in the act of adultery and the wife's lips are closed, for she is legally incompetent to testify against her husband when indicted for crime, except when charged with an assault and battery on her person, or for abandoning her or for neglecting to support her.   Revisal, sec. 1635.   There are no other exceptions to her statutory incompetency.   This general disability of those occupying the marital relation to testify against each other is

founded on the soundest principles of public policy, and has been recognized from the earliest times since the case of Lord Audley, 3 How. State Trials, 402.

So it is well known to the General Assembly that in indictments under the statute we are considering the husband can testify in his own defence, but the wife may not be called to contradict him, or to defend her own honor.

In an action for divorce neither husband or wife is permitted to testify concerning the adultery of the other, but under this indictment the husband can testify in his own behalf and prove adultery upon the part of his wife, while her mouth is sealed by the law. It is inconceivable that the General Assembly could leave the wife in any such cruel position while undertaking to legislate for her protection.

If the Legislature had intended to include husband and wife within the purview of this statute, doubtless it would have amended the law so as to make the wife a competent witness, as in the other cases, to prove the crime committed against her; not only to contradict her husband, but also to prove her own virtue and continence, an essential fact incumbent upon the State to affirmatively prove before a conviction can be had. Without the evidence of the wife the prosecution must be doomed to failure. Her evidence could scarcely be supplied.

We think it best to adhere to the judgment of our predecessors, and leave any change to be made by the Legislature, if in its wisdom any is deemed desirable.

If by legislation this statute should be extended so as to embrace those who are husband and wife, the law-making power can and will do the latter the plain justice to open the door, that she may be a competent witness in a proceeding where her honor is at stake. Three Justices having voted to quash the indictment, the judgment of the Superior Court is

Affirmed.

WALKER, J., concurring in the result: I concur with the Chief Justice and *Justice Connor* that a husband is indictable under the statute for wantonly and maliciously slandering his wife. I can conceive of no valid reason for withholding from her the protection of the statute. Such a slander is within the letter of the law and certainly is within its spirit. This prosecution is not like a civil action for slander. The offense is committed not so much against the wife as against the State. It is intended and has the effect to prevent breaches of the peace and the separation of husband and wife, rather than to encourage them, and is not at variance with any sound public policy. Such a slander would be a sufficient cause for a legal separation by civil action, and, if so, why not for a criminal prosecution. Suppose it had been a libel instead of a slander, could the husband publish such a libel with impunity? The authorities cited in the opinion of the Court, delivered by *Justice Brown*, seem to be based upon the idea of the unity or identity of husband and wife and hold, therefore, that the one cannot sue the other. Our statute authorizes an action by the wife against the husband, not only when it concerns her separate estate but in all other cases where she has a cause of action against him. Revisal, sec. 408. In *Phillips v. Barnet,* 1 Q. B., Div. 436, the Court, by *Blackburn, J.,* said: "This action (for assault) cannot be maintained. There is no doubt that if the wife receives bodily injury from the hands of her husband, he is liable to criminal proceedings for a felony or misdemeanor, as the case may be; and in the case of an ordinary assault it is quite clear that the wife has a right for her protection to obtain articles of the peace against her husband, and upon this and upon other occasions she is in law a separate person." *Lush, J.,* in the same case, said: "It may be safely laid down, I think, that neither can acquire any civil rights against the other, or apply to any civil court to enforce them. For her personal protection the wife may exhibit articles of

STATE *v.* FULTON.

the peace against her husband, but, in my opinion, her remedy does not extend to the bringing of an action against her husband." I can understand the reason for the common law denying to the wife a civil remedy against her husband, but why should the unity or identity of husband and wife prevent a criminal prosecution, in which the State is the prosecutor and not the wife, and the offense is against the public? She could not, at common law, sue her husband for an assault, but he could be indicted. Why should he not be indicted for an assault upon her character, which may be more grievous in its consequences to her than one upon her person? If, in the one case, an indictment will lie for the protection of her person, why should it not lie in the other, for the protection of her character? If it is said that an indictment for slander will tend "to interrupt the marital relation" and prevent the restoration of peace and harmony between the husband and wife, it may, with equal force, be asserted that an indictment for an assault would lead to the same result.

I concur in affirming the judgment, but not for the reasons assigned in the opinion of the Court, delivered by *Justice Brown.* The case, I think, is governed by the principle laid down in *State v. Bell,* 136 N. C., 674. As said in the opinion of the Court in the present case, "the judicial interpretation of a statute becomes, as it were, a part of the statute," and if that "interpretation" is afterwards changed or modified, the defendant should be tried under the law as it had been declared to be at the time the alleged offense was committed, simply because it was the law at that time. The defendant, it is true, has no vested right in a decision of this Court, but it does not follow that we should reverse our decisions and then declare that to be criminal which we had decided was not so at the time of the commission of the alleged offense. While I think a husband is indictable for slandering his wife, this Court had decided otherwise, and he is entitled to the benefit of the law as it existed at the time of

the alleged offense. Any other view would be productive of great wrong and injustice.

The question I am now discussing was not raised by the defendants in *State v. Oliver,* and the other cases cited in the opinion of the Chief Justice. It is a mistake, I think, to suppose that *State v. Bell* was decided as it was because it involved the construction of a contract. It rests upon the principle I have already stated, namely, that a decision of this Court is the law until it is overruled, and the reversing decision should not be given retroactive effect, and also upon the ground that the overruled case had construed a statute, and the defendant, in committing the act alleged to be criminal, had the right to rely upon that decision as correctly declaring the law. The act charged to be criminal may, in some cases, not be *per se* wrong or involve in any degree moral turpitude, and if not forbidden by the law, it may be morally and legally right to do the act. Therefore if, in doing such an act, the defendant has relied on a decision of this Court that it is not legally wrong, why should he be punished as a criminal? The decisions of this Court do not merely settle controversies between parties, but we declare in them the law applicable generally, and for that reason they are held to be authoritative in other similar cases. We decide each case upon some general principle applicable to all like cases.

The Court, in *State v. Bell,* was construing a criminal statute and not a contract. This appears clearly from the following language: "While we recognize the duty of the Court to avoid overruling its decisions, we feel well assured that the language of the statute demands that we concur with his Honor's ruling and overrule our own decision in *Neal's case.* It is very desirable that the relative rights and duties of landlords and tenants be clearly defined. The statute is plain, and when it is understood that the Court will not encourage experimenting with it, both parties will recognize and respect the rights of each other. While we hold the law

to be as stated, we are embarrassed in applying this ruling
to this case. It may be that these defendants have acted up-
on the advice of counsel based upon the decision of this Court
in *State v. Neal, supra.* If so, to try them by the law as here-
in announced would be an injustice." *State v. Bell,* 136
N. C., 676. The question of vested or contractual rights
could not well have been involved. It was not the breach of
a contract for which Neal and Bell were indicted, but the
violation of the statute in removing a crop, and, therefore,
the sole question involved was the true meaning of the statute.
The question involved in *State v. Edens* was the construction
of a statute, and what is the meaning of the same statute, is
the question presented in this case.

If this Court adheres to its decision in *State v. Bell,* and
that case is to continue as a precedent, it applies, in princi-
ple, to this case and, for that reason, I think the indictment
should be quashed.

CLARK, C. J., dissenting: The indictment charges that
the defendant "did unlawfully and wilfully, in a wanton and
malicious manner, attempt to destroy the reputation of Carrie
Fulton, his wife, being then and there an innocent and vir-
tuous woman, by words spoken of and concerning the said
Carrie Fulton, the wife of the said Winston Fulton, which
amounted to a charge of incontinency against the said Carrie
Fulton." The bill was quashed, and the State appealed. For
the purpose of the appeal the charge must be taken as true,
and the sole question is whether the facts constitute an indict-
able offense. The question cannot now arise whether the wife
would be a competent witness to prove herself "an innocent
and virtuous woman," nor how the offense can be proven if
she is not a competent witness to that fact. Quashing a bill
is like a demurrer that the complaint does not state a cause
of action. The facts charged must be taken as true.

The indictment is drawn under Revisal, 3640.

STATE *v.* FULTON.

The preamble which discloses the purpose of the Legislature in the passage of this act is as follows:

"Whereas, the very existence in society of ●innocent and unprotected women depends upon the unsullied purity of their characters; now, therefore, to protect them against persons who may attempt in a wanton and malicious manner to destroy their reputation the General Assembly of North Carolina do enact:" See chap. 156, Laws 1879.

The statute provides, that if *"any person"* shall attempt in a wanton and malicious manner to destroy the reputation of *"an innocent woman"* by words, written or spoken, which amount to a charge of incontinency, *"every person"* so offending shall be guilty of a misdemeanor. To sustain the quashing of this indictment, the Court is compelled to write into this statute several words which the Legislature did not put in it. The statute must be made to read, "If any person (*except a husband*) shall attempt in a wanton and malicious manner to destroy the reputation of 'an innocent and virtuous woman' (other than his wife) by words written or spoken, which amount to a charge of incontinency 'every person' (*except such husband*) shall be guilty of a misdemeanor."

It cannot be questioned that the Legislature could have written such words in the statute, but it did not do so. Whence then does this Court derive its authority to insert them?

It cannot be contended even that the insertion of those words improves the statute in any particular. When a "man who has promised at the altar to love, comfort, honor and keep his wife, in sickness and in health," attempts in a wanton and malicious manner to destroy her reputation by falsely and publicly charging her with incontinency it is more cowardly and damning than if he had so charged another woman who, perhaps, has a protector to whom her good name is "above rubies," and who stands ready to resent the charge. The wife is usually defenseless unless the husband defend her. Does the law therefore exempt her from the protection

accorded to all other "innocent and virtuous" women? The statute, as written by the law-making body, does not deprive her of the protection accorded to any other innocent and virtuous woman.    Why should the courts remake the statute and write into it so many words to give it that effect?

It is said that the law should "draw a veil over dealings between man and wife."    But this is not such dealing, and even if it were, the law has "never drawn a veil" when her body is assaulted by her husband and serious injury inflicted. Why then should it be done when the injury inflicted is more cruel and abiding than the red welt of a husband's lash?    It is true that for the aforesaid purpose of "drawing a veil over dealings between man and wife," for long centuries the husband was held authorized to inflict personal chastisement upon the wife, provided "no serious bodily harm or permanent injury were inflicted" or, as some decisions phrased it, "if the rod used was not larger than the husband's thumb."    But in State v. Oliver, 70 N. C., 61, this Court overruled numerous decisions to that effect, Settle, J., saying, "The Courts have advanced from that barbarism until they have reached the position that the husband has no right to chastise his wife under any circumstances."

Our courts were slow to reach this position, having held just the opposite as late as State v. Rhodes, 61 N. C., 453 (1868), in which the Judge below charged that a man had a right to whip his wife with a switch no larger than his thumb, and on appeal it was held "no error," and State v. Rhodes was cited and approved in State v. Mabrey, 64 N. C., 593 (1870).    "Having advanced from that barbarism" by the ruling in State v. Oliver, 70 N. C., 61, the latter case was reaffirmed in State v. Dowell, 106 N. C., 724, and no one now questions that a husband is liable for an assault if he chastises his wife "under any circumstances whatever."

If the Court will no longer "draw the veil over dealings between man and wife," i. e., will not leave the wife outside

the protection of the law in such matters as leave no permanent injury and may be sometimes forgiven and forgotten, why should it "outlaw" a woman when the very gist of the offense against her is its publicity, and its very nature such that neither she nor the public can forget it?

It is said, however, that this Court has held that the husband was not liable for slandering his wife in *State v. Edens,* 95 N. C., 693. But, as we have seen, the statute contains no words exempting the husband from liability under, nor depriving the wife of the protection of, the statute. Centuries of uniform decisions did not preserve to husbands a vested interest in the right "to whip their wives with a switch no larger than the husband's thumb." And one single decision, not warranted by the terms of the statute and, in fact, contrary to it, cannot confer upon the defendant or any other husband a "vested right" to slander his wife by falsely and maliciously charging her with a want of that womanly virtue without which she is an outcast in society.

Besides, an examination of *State v. Edens* shows that it is based upon the very reasoning used in *State v. Rhodes* and similar cases, and that it contains no reference whatever to the subsequent case of *State v. Oliver,* 70 N. C., 61, which had overruled the previous cases and denied the soundness of the reasons which had been given in them for depriving the wife "of the equal protection of the laws." *State v. Edens* has been referred to since, but has been approved on this point *by no case whatever.* It stands alone.

It may be noted also that even the old line of cases, which were repudiated as "barbarism," in *State v. Oliver,* 70 N. C., 61, held a husband liable for an assault when it was not of a trifling nature, but serious, or the assault was made in a wanton and malicious manner, as threatening with a deadly weapon (which inferred malice) though no damage was done. *State v. Davidson,* 77 N. C., 522.

149—32

So that, even under the reasoning in the old line of cases now discarded as "barbarous," the Court would not "draw a veil" to deprive a woman of the protection of the law, when the damage done was of a serious nature (as is a public charge of a want of chastity) and the injury is wanton and malicious.

Statutes making slander of woman indictable are a recent development, and the protection intended should be as broad as the spirit which caused their enactment. They should protect all innocent, and virtuous women, and against all lying and malicious tongues whatsoever.

For the old doctrine that a man had a right to thrash his wife whenever he pleased, provided he did not "use a switch larger than his thumb," or did not "do serious bodily harm or inflict permanent injury," three reasons were given, none of which justify giving the husband privilege and immunity "to wantonly and maliciously destroy his wife's reputation by false charges of adultery." It was said:

. 1. It is the "husband's duty to make the wife behave herself" and thrash her if necessary to that end, as *Pearson, C. J.,* held in *State v. Black,* 60 N. C., 263. But it has no tendency to "make her behave herself" to falsely and maliciously scatter abroad charges of adultery against her to "destroy her reputation."

2. "To draw a veil over dealings between man and wife," the idea being that a little wholesome chastising, to "make her behave herself," privately administered, would make less noise and scandal than the publicity of a court trial. But to attack the *reputation* of a wife by charges of adultery is publicity, and to make doing so falsely and maliciously punishable is to prevent such scandal and publicity. . It is not, like the thrashing, a "dealing between man and wife," or done for any possible motive of his "making her behave," but to attempt to destroy her reputation is a dealing by the man

STATE *v.* FULTON.

with the public, and the act must be proven to have been done wantonly and maliciously, or there can be no conviction.

3. That there was a long line of decisions giving the husband privilege and immunity to inflict chastisement. But there is only one case that has ever held he can, with impunity, "falsely and maliciously" slander her.

As notwithstanding the three above given most excellent reasons set out in the old decisions, a husband is no longer privileged to chastise his wife, in moderation, why should we hold that he is privileged to slander her when not one of these reasons apply to slander of the wife?

To the credit of husbands, few cases presenting this point have arisen. Indeed, *Slayton v. The State,* 108 Am. St. 988; 46 Tex. Crim. Appeals, 205, appears to be the only case, except *State v. Edens,* in which it has arisen in this country, and, in *Slayton's case,* upon a statute almost identical with ours, it was held that the husband was liable for maliciously and wantonly slandering his wife. We will search in vain for any good reason why he should not be. We shall certainly find no reason for so holding in the words of the statute. That does not except him. Under our present humane laws, a man will not be allowed to "wantonly and maliciously" injure his horse or his dog that belongs to him. Is his wife in worse condition?

Should it be difficult to enforce the statute against the husband, in such cases, because the wife may not be a competent witness to prove her own chastity (as to which we express no opinion) it rests with the Legislature to remedy that defect, if it exists, if it shall see proper.

The misconception of the statute in *State v. Edens* did not repeal it or give the defendant a vested right to slander his wife. Should he be convicted and the Judge find that the defendant would not have wantonly and maliciously attempted to destroy his wife's reputation, by falsely charging her with adultery, but for his knowledge of *State v. Edens,* and

therefore, supposing that he was immune from punishment, the Judge can give that fact such weight as he thinks proper in imposing sentence, or the governor can do so in passing upon a petition for pardon or commutation. But what we now declare the meaning of the statute to be is a declaration of what it meant when passed. The defendant Edens is the only person entitled to be protected by the erroneous construction placed on the statute in his case.

Oliver was held guilty of assault in whipping his wife (*State v. Oliver,* 70 N. C., 61), though for centuries it had been erroneously held that he could do, with impunity, exactly what he did. Indeed, *Pearson, C. J.,* had very recently repeated the old decisions in *State v. Black,* 60 N. C., 264, and *Reade, J.,* in two cases above cited, *State v. Rhodes,* 61 N. C., 453, and *State v. Mabrey,* 64 N. C., 592. Yet both these Judges concurred in *State v. Oliver* in overruling these cases.

In *Mial v. Ellington,* 134 N. C., 131, we held that Mial was entitled to his office though this Court had held otherwise for seventy years. It would lead to insuperable embarrassments to hold that an inadvertent decision of a Court is a contract with the public. In *State v. Bell,* 136 N. C., 677, *Connor, J.,* puts the decision on the ground that the overruled decision rested on the construction of a contract.

Three Judges in their opinion filed in this case hold, that under Revisal, sec. 3640, a husband who "wantonly and maliciously attempts to destroy the reputation of an innocent woman" is indictable even though such "innocent woman" happens to be his wife. *State v. Edens,* 85 N. C., 522, is overruled. Nothing else appearing the judgment of the Court below quashing the bill must be reversed. In the opinion filed by only one member of the Court it is held (and no concurrence therein is expressed in any other opinion) that the overruled decision is a bar and protection against an indictment. It would seem logically and necessarily to follow that

STATE *v.* FULTON.

the quashing of the bill should be reversed. See *per curiam* at end of opinions in *Stewart v. Lumber Co.,* 146 N. C., 116.

CONNOR, J., dissenting: Slander was not indictable at common law in England, and was not made so in North Carolina until the enactment of the statute of 1879. Rev., sec. 3640. We are not advised whether, by an act of Parliament, it is made criminal in England. We are, therefore, without any direct authority based upon decisions declaratory of the common law, in regard to the liability of the husband to indictment for slandering his wife. The statute under which defendant is indicted declares that: *"If any person shall,"* etc. . . . . "to destroy," etc., and in conclusion: *"Every person so offending,"* etc. This language is not open to construction or interpretation. There can be no possible doubt that, unless there be some controlling reason to the contrary, the Court must enforce the statute as it is written. We have no power to write exceptions into it, unless manifestly necessary to effectuate an intention of the Legislature contrary to the plain and well settled meaning of the language used by it. I concede that the words "any person" do not include such persons as are incapable of committing the crime, as are *doli incapax,* either for want of understanding or immature age. This, however, must be made to appear upon plea of not guilty and not by motion to quash. No such question arises here. We are asked to find a legislative intention to exclude the husband notwithstanding the comprehensive language used. This contention is based upon the proposition that, by the common law, the husband was not liable to indictment for slandering his wife. The fallacy of the contention, to my mind, arises out of the assumption of the fact that such was the common law in this State, at the time the statute was enacted. There is no suggestion that, notwithstanding the common law, the Legislature had not the power to include the husband. The argument is that we must find that it did not *intend to do so,* because, in the absence of lan-

guage expressly changing the common law, we must say that it was not so intended. Without conceding that the rule of construction invoked would carry us so far, I do concede that the rule is correctly stated in the opinion of *Mr. Justice Brown.*: I find it well and more strongly stated by *Chief Justice Taylor* in *Kitchin v. Tyson,* 7 N. C., 314. "When a statute makes use of a word, the meaning of which was well ascertained at common law, the word shall be understood in the same sense it was at common law." I further concede, as said by the *Chief Justice,* "that when the provision of a statute is general, it is subject to the control and order of the common law." *Ib.* With this concession I submit that, neither in England, prior to the separation of the Colony and the organization of the State, nor in North Carolina, since its existence as a State, can it be shown by judicial decision that a husband was not indictable for a "wanton and malicious" injury to his wife. It is true, those who builded the common law were rude of speech and not so gallant of manner as their Norman neighbors, but they abhorred fraud, covin and malice, and punished with severity crimes prompted by either. The only offense against the wife, by the husband, in regard to which authority in the old books on criminal law is found, is an assault. It is sought, by analogy, to hold that, if the husband was not indictable for a simple assault, he should not be for a malicious slander of his wife. This is a large conclusion to draw from so small a premise— but the premise itself is not sound. *Mr. Justice Reade,* in *State v. Rhodes,* 61 N. C., 453, traces the history of the common law, in that respect, from Blackstone's statement "that the husband, by the old law, might give the wife moderate correction, for, as he was to answer for her behavior, he ought to have the power to control her, but that, in the polite reign of Charles the Second, this power of correction began to be doubted." I Blk., 444. The learned Justice, after noticing the trend of thought and the authorities on the subject, con-

cludes: "The old law of moderate correction has been questioned even in England and has been repudiated in Ireland and Scotland." Whatever doubt was left by the decision of that case, as to the common law in North Carolina, was removed by the unanimous decision in *State v. Oliver,* 70 N. C., 60 (1874), wherein it was declared that a husband had no right to whip his wife, without regard to the animus, weapon used, or injury inflicted. This was, therefore, the common law in this State when, in 1879, the Legislature enacted the statute declaring that: "If any person," etc., and that: "Every person so offending," etc. It is undoubtedly true that when we seek to know the common law, we go to the "storehouse of reason and good sense" found in the writings of the sages of the law in England; "but since courts have had existence in America, they have never hesitated to take upon themselves the responsibility of saying what *is* the common law, notwithstanding current English decisions." *Sayward v. Carlson,* 1 Wash., 29; *Livingston v. Jefferson,* 1 Brock, 203, by *Marshall, C. J.* This must be true, otherwise, "as society becomes more complex and new demands are made upon the law by reason of new circumstances," the courts would find themselves unable to give expression to the sense of right and justice in private law, or the public safety and welfare in public law, until the English courts saw fit to change their decisions or the State Legislature to make new statutes. While judges diligently seek to find the law and the reasons upon which it is founded, by reference to the decisions of other courts and the conclusions drawn by commentators, yet, in a certain sense, each State has a common law of its own, based upon the conditions and necessities of its own people. In so far as it can be done, it is desirable to have the common law of the American States uniform, and to that end the judges consult the opinions of the courts of other States, giving to them such weight as, in their opinion, they are entitled, as persuasive or convincing

as to what the law is. In this way "the law works itself pure." Conceding that we must look to the common law to ascertain whether the Legislature of this State in 1879 intended, when it used the words "any person," to exclude husbands charged with slandering their wives, we find that, by that rule of construction, a husband was indictable for an assault upon his wife whether malicious or otherwise. To write into the statute making a malicious slander indictable, an exception in favor of the husband, when for a simple assault he was indictable, would be, I submit, doing violence to the rule of construction invoked by the defendant and the plain language of the statute. I do not think it within our province or power to write the exception into the statute, because, in our opinion, public policy would be thereby promoted. This would be to invade the province of the Legislature. While I hold, as a cardinal and essential truth in our system of government, that it is the imperative duty of the Court to declare invalid any statute which does not conform to the supreme law, I hold with equal tenacity that the Court has no power to change the written law when within constitutional limitations, or to listen to persuasive suggestions of public policy or general good, when invited to construe statutes, the meaning of which is so plain that he who runs may read. To do this produces confusion, and destroys the symmetry of our constitutional system of government. If, however, I were permitted to enter into this field of thought, I should reach conclusions essentially different from those of *Mr. Justice Brown.* To my mind, the decision produces a singular anomaly in our jurisprudence. The husband may, with impunity, maliciously slander his wife, but if he lay the weight of his hand upon her in anger, he is indictable. I submit that this is not the "perfection of human reason," nor is it in accord with the intelligent sentiment of our people, in the light of the civilization of the twentieth century. It is not claimed that any Legislature has so declared otherwise than by judicial con-

struction. But we are confronted with an express decision of this Court in *State v. Edens,* 95 N. C., 693, made by judges of great learning, eminent wisdom and large experience, holding that the Legislature did not intend to ·include the husband in the statute, and that he was not indictable for violating its provisions when his wife was the person slandered. I freely concede all that is so well said by *Mr. Justice Brown* in regard to the weight to be given the decision of this Court in that case. I also concede that we should regard it as an authentic declaration of the intention of the Legislature, unless, upon the most careful consideration, we are fully convinced that such decision is not in accordance with sound principle or controlling authority. With the utmost respect for the learned judges who decided *Edens' case,* I find myself impelled, after most anxious consideration, to conclude that the decision is not in harmony with the express language of the statute or the principle of the common law as declared by this Court. I do not think that the legislation regarding the property rights of married women affects the question. I am impressed with the fact that the *Chief Justice,* in *Edens' case,* overlooks *Oliver's case,* and says that the husband is indictable for an assault on his wife only "when the battery is so great and excessive as to put life and limb in peril, or when permanent injury to the person is inflicted, or *when it is prompted by a malicious and wrongful spirit.*" (Italics mine.)

While, as we have seen, this is in direct opposition to the decision in *Oliver's case,* it would seem a legitimate conclusion to draw, that if the injury done the wife by the husband is "prompted by a malicious and wrongful spirit," he is indictable, I am unable to see any valid reason for holding that if he assault her person, being prompted by malice, he is liable, whereas, if he assault her character, being prompted by the same malicious and wrongful spirit, he is not so. Certainly her fair name and reputation is as sacred, both to her

and to the State, as her person. To protect one from the assault of the husband and leave the other to his wanton and malicious attack, is consistent with neither her rights nor the welfare of society. The reason upon which the courts refuse to take cognizance of trivial disputes between husband and wife, beginning and ending in the privacy of the home, deeming it wiser and more conducive to the peace and happiness of families, utterly fails when the husband wantonly and maliciously and with intent to injure her, utters and publishes false and defamatory slanders against her. It is here impossible to "draw the curtain" and conceal from public gaze the wrong which is done. This crime is never committed in "domestic privacy." It is said that to hold the husband amenable to indictment tends to prevent a reconciliation. I submit that to restrain men from committing the great wrong—giving expression to his malice—will better protect the sanctity of the home, the peace of the family, the good name of the wife and children and the welfare of society, than to grant him immunity to do the wrong and trust to the forgiveness of the injured wife for reconciliation. Again, it is not the wife alone who is injured by the malicious slander, but the State is offended, the public peace is endangered. What is more calculated to produce violence and disturbance than to suffer a husband, whose mind and heart are made the home of malice, to go abroad slandering his innocent wife? It is unnecessary to further pursue the subject. I cannot doubt that the Legislature intended what it said and, so thinking, I can find no warrant from any point of view to write an exception into the statute, giving the husband a right to maliciously slander his innocent wife with impunity. It is said that to so hold puts the wife at a disadvantage, because the statute, Rev., sec. 1635, does not permit her to testify in her own behalf. Obvious answers occur to my mind. We have no right to make exceptions in our statute because the Legislature has not provided what we may think

an effective mode of proving the crime. It is not within our province to say how the proof shall be made. If the rules of. evidence are defective, it is the duty, and, we doubt not, will be the pleasure of the Legislature to change them. Again, this question is not before us. The defendant demurs to the indictment, hence, for the purpose of passing upon the appeal, we must treat the *fact* as admitted. In a motion to quash, or in arrest of judgment based upon the insufficiency of the bill, the only question presented is whether an indictable offense is charged.

For the purpose of disposing of this appeal, the substantive elements of the offence are to be taken as admitted. I am of the opinion that his Honor was in error in quashing the bill. While I do not think that the question decided in *State v. Bell,* 136 N. C., 674, is presented here, I deem it proper to say that, having written the opinion in that case, upon further consideration, I do not think that the decision is consistent with, or sustained by, reason or the best considered authorities. It seemed probable that, in view of the peculiar facts of that case and the evident hardship imposed upon the defendant by reason of a misunderstanding of his rights, under the contract with his landlord, he was misled by the decision in *Neal's case.* I do not care to enter into further discussion of that question at this time, and only mention it in deference to the opinion of *Mr. Justice Walker,* and because I think frankness makes it proper to say this much. It was one of those hard cases which are said to be "the quicksands of the law." I do not think it should be extended or applied to the wanton and malicious slander with intent to destroy the reputation of an innocent woman.

I have felt impelled to express my views in this case because of its importance as a step in the development in the common law upon this subject. To the credit of our people, be it said that but few cases have been presented to this Court wherein husbands have been so recreant to the duty which

they owe to their wives as to come under the condemnation of the criminal law. The views which I have expressed, I think, give expression to what I conceive to be the best enlightened public sentiment, crystalized into law.