LOUISA PRICE AND HUSBAND, R. S. PRICE, v. CHARLOTTE
ELECTRIC RAILWAY COMPANY.

(Filed 20 November, 1912.)

**Husband and Wife—Negligence—Loss of Wife's Services—Recovery by Wife—Judgments—Estoppel of Husband.**

When a husband has joined in an action with his wife to recover damages for a personal injury to them both, arising from the same negligent act, and his counsel withdraws all claim for damages for him, and the action is successfully prosecuted to recover damages for the wife's injuries inflicted on her, including damages arising for a loss or material impairment of her capacity for labor, particularly of a permanent nature, he, by thus prosecuting and acquiescing in the action of his wife, will be deemed to renounce in her favor his right to recover for the loss of her services, and the judgment will estop him from any further demand thereof.

CLARK, C. J., concurring in result; BROWN, J., concurring in the concurring opinion.

APPEAL by defendant from *Daniels, J.,* at July Term, 1912, of MECKLENBURG.

Civil action to recover damages for personal injuries, instituted by Louisa Price, *feme* plaintiff, and her husband, R. S. Price.

The record shows that, at the opening of the trial, plaintiff's counsel stated in open court that it was not their intention to claim damages for plaintiff's husband, R. S. Price. The jury rendered a verdict that Louisa Price was injured by the negligence of defendant company and suffered damages and to the amount of $5,000. There was no issue as to contributory negligence, same not having been pleaded as against either plaintiff. Judgment on verdict, and defendant excepted and appealed.

*T. L. Kirkpatrick, E. R. Preston, and Neill R. Graham for plaintiff.*

*Osborne & Cocke for defendant.*

HOKE, J. The complaint alleged, and there was evidence on the part of plaintiffs, tending to show, that in the early evening, 27 September, 1911, 8:30 o'clock, plaintiffs, R. S. Price and

wife, were driving a horse and buggy out from the city of Charlotte, and when near defendant's track, on account of a rough place in road, the track being laid in the street or highway, they were run into by a car of the defendant company, which approached from behind plaintiffs, without signal or warning of any kind and at a much greater rate of speed than allowed by law; that as a result of the collision, both plaintiffs were thrown to the ground; the wife was dragged for some distance and seriously injured, necessitating the amputation of her foot at the ankle; one arm was broken, leaving it crooked and stiff; she received also a deep cut and bruises on the head, which had to be sewed up with many stitches and which still cause her severe and continued pain; that plaintiff, Robert Price, was also thrown to the ground and received bruises, and his horse was killed. There was general denial on the part of defendant company and evidence offered in support of its position, but, on the issue as to defendant's negligence, and under a charge which gives defendant certainly no just ground for complaint, the facts stated have been accepted by the jury, and no good reason has been shown for disturbing the verdict on that issue.

It was chiefly urged for error that his Honor, in charging the jury on the issue as to damages, allowed the *feme* plaintiff, in addition to compensation for her pain and suffering, to recover by reason of her diminished capacity to labor and make a living. There are decisions to the effect that, in actions for personal injuries by the wife, when there has been loss or material impairment of her capacity for labor, and particularly of a permanent nature, this may be properly considered as an element of the damages to be recovered. *Railway v. Nichols,* 41 Col., 272; *Railway v. Jacobs,* 88 Ga., 647; *Powell v. R. R.,* 77 Ga., 192; 13 Cyc., p. 143. There is also high authority for the position that, in jurisdictions where the Constitution or statutes or both have conferred on married women the right to own, control, and dispose of property as if they were *femes sole,* a recovery of the kind in question should be allowed. *Texas Pacific Ry. v. Humble,* 181 U. S., 56; *Harmon v. Old Colony R. R.,* 165 Mass., 100.

Our own Court has thus far taken a different view as to the effect of these constitutional and statutory provisions, as in *Syme v. Riddle,* 88 N. C., 463, and other cases. In many of the States, however, in which this same view prevails, it is very generally held that such recovery should be allowed by the wife when it is shown that she is pursuing an independent employment; is engaged in making her own support and receiving her wages for her own benefit. *Fleming v. Shenandoah,* 67 Iowa, 105; *Bailey v. Centerville,* 108 Iowa, 20; *Hadley v. Balantine,* 66 N. J. L., 339.

The North Carolina decisions were rendered prior to the Martin Act, Laws of 1911, chapter 109, which practically constitutes married women free traders as to all their ordinary dealings, and we are not called on to determine the effect of this legislation on the question presented, as all the authorities here and elsewhere hold that a husband may confer this right to earn and acquire property upon the wife, in any event when the rights of creditors do not intervene. *Syme v. Riddle, supra; Cunningham v. Cunningham,* 121 N. C., 414; *Peterson v. Mulford,* 36 N. J., 481; *Mason v. Dunbar,* 43 Mich., 407.

It may be that, under our decisions as they now stand, it would not of itself be sufficient to support the verdict that the wife, living at the time with her husband, was earning her own support, working out for hire and receiving the wage; but it appears, further, that the husband, made a party plaintiff, pursuant to the statute, and charged to some extent with the duty of looking after his wife's interests (*Vick v. Pope,* 81 N. C., 22), has permitted his wife to insist on this loss of capacity as an element of recovery and has acquiesced in the result. This, in our opinion, should be held to validate such a recovery even if it could be otherwise questioned. True, there are decisions to the effect that, in a suit of this kind by the wife, a verdict and judgment for defendant was not allowed to estop the husband in a suit to recover for his own injury, a position that seems to have been stated with approval in one case where the husband was a nominal party (*Walker v. Phil.,* 195 Pa. St., 168), but none of these authorities, so far as examined, would sustain the principle that when a husband, party of record, has

thus formally given his sanction to a recovery of this character, that the same could be afterwards questioned either by him or by the company.

Our decision is in no way affected by the entry on the record that plaintiffs' counsel stated in open court that "it was not their intention to claim damage for plaintiff husband." Such an entry by correct interpretation was intended to refer to the cause of action also set forth in the complaint for the physical injuries to the husband and the wrongful killing of his horse. If allowed any effect on the wife's cause of action, it permits and in our opinion should receive the construction that the husband made no claim to the damages in any way incident to the wife's cause of action, but formally renounced. the same in her favor. In this view it only gives emphasis to the position that on the record the husband has formally passed to the wife the right to recover for the loss or impairment of her capacity to earn a living. The other portions of his Honor's charge in this connection, to which objection is also made, was only in illustration of the proper method of arriving at the present value of the loss to the wife, and does not afford ground for substantial criticism.

After careful examination, we are of opinion that no reversible error has been shown, and the judgment in plaintiff's favor should be affirmed.

No error.

CLARK, C. J., concurring in the result: Louisa Price sustained serious injuries caused by the negligence of the defendant, as the jury find. Her right foot was amputated, her right arm was broken and permanently rendered stiff, and her head severely gashed. For these injuries and for her physical and mental suffering, and for her diminished power to earn wages by reason of her injuries, the jury assessed her compensation at $5,000. The able counsel for the railroad company strenuously argued that being a married woman this compensation was the property of her husband, and could be recovered only by him, and not by her. Fortunately for her, the husband had been made a coplaintiff, and the Court does not pass upon the point.

But the contention that the wife's earnings, and damages for injuries sustained by her person and for her sufferings, physical and mental, belong to her husband, cannot be maintained except upon the principle that the earnings of a slave and damages for injuries to the slave's person are the property of the master. This was the origin of these decisions centuries ago, when "in the eyes of the judges" the wife was merely the chattel, the property of her husband, for no English-speaking legislative body has ever so enacted. The doctrine was entirely the creation of the courts; that is, it was the "common law," which is simply another name for "judge-made law." It has not even the excuse that it was the custom among the Saxon tribes, for, barbarians though they were, no such system prevailed among them. The doctrine was created by the courts after the Conquest, and is based solely upon the ideas of the judges of that date as to what was the proper status of women.

Under the Constitution of 1868 a married woman owns her property as absolutely as if single, or as her husband owns his, and it should follow, most certainly since the act of 1911, giving a married woman the right to contract as if single, that her earnings in occupations elsewhere than in her household duties belong to her, and that she has the same right to recover them as the husband has to sue for his own earnings. For a stronger reason, damages for injuries to her person and for her physical and mental suffering must belong to her. Such damages are compensation intended to put her in *statu quo,* so far as she can be compensated by money for the loss, which is peculiarly her own.

Many courts of the highest reputation have held that the statutes conferring upon married women the right of property and the right to contract carry with them the right to recover earnings and damages for injuries causing loss of capacity to earn, and for physical and mental suffering. *R. R. v. Humble,* 181 U. S., 57; *Harmon v. R. R.,* 165 Mass., 100; *Duffee v. R. R.,* 191 Mass., 563; *Hatton v. R. R.,* 3 Penniwell (Del.), 159; *Athens v. Smith,* 111 Ga., 870; *R. R. v. Krempell,* 116 Ill. App., 253; *Logan v. Logan,* 77 Ind., 558; *Harkness v. R. R.,* 110 La., 823; *Rockwell v. Traction Co.,* 187 Pa. St., 568; *Normile v. Traction Co.,* 57

W. Va., 132, and there are many others. These decisions are in accordance with the spirit of the age and of the Constitution and laws.

It is true that under the decisions of the courts made in a ruder age, not based upon any statute, but evolved by the judges out of their own consciousness, and termed by euphemism "the common law," a married woman could not recover her earnings, nor for damages to her person, nor for her sufferings, physical or mental, and that compensation for all these things belonged to her husband, upon Petruchio's theory that the wife is the chattel or property of her husband. Upon this common law it was held in North Carolina, by *Pearson, C. J.,* in *S. v. Black,* 60 N. C., 263, that it was the "husband's duty to make the wife behave herself" and to thrash her, if necessary to that end, and in *S. v. Rhodes,* 61 N. C., 453 (1868), this Court sustained the charge of the judge below that a man "had the right to whip his wife with a switch no larger than his thumb," and this was cited and approved in *S. v. Mabrey,* 64 N. C., 593. But in *S. v. Oliver,* 70 N. C., 61 (in 1874), this Court overruled the numerous decisions to that effect, *Settle, J.,* saying: "The courts have advanced from that barbarism." Thus passed away the vested right of the husband to thrash his wife "with a whip no larger than his thumb," without any statute to change the law.

As late as 1886, in *S. v. Edens,* 95 N. C., 693, the Court again held, upon the same "judge-made" law of former times, that a man could "wantonly and maliciously slander" the good name of his wife with impunity, or "assault and beat her" if he inflicted no permanent injury upon her; but a majority of this Court reversed that holding in 1908 without any statute, in *S. v. Fulton,* 149 N. C., 485, since which time no man has had legal authority to slander or assault and beat his wife in North Carolina. And thus passed away another vested right, or rather another vested wrong.

In view of the Constitution and statute conferring upon a married woman the absolute right to her own property and unlimited power to contract, it should not now require any statute to abolish the claim (which was never based upon any statute, but was purely the creation of the judges in a ruder age) that

a married woman could not recover her earnings nor damages for injuries to her person causing her loss of earning capacity and great mental and physical suffering.

Even statutes have been held obsolete and unenforcible because of changed conditions and the long lapse of time. Certainly this ought to be true of decisions which rest upon no statute and which are now contrary to every sense of right and opposed to the spirit of our Constitution and of the age in which we live.

The "common law" has been praised because of the very fact that, being "judge-made," it was flexible and could be molded from time to time to fit the changing conditions of society. But it loses this sole excellence when it is used to thwart beneficial statutes, expressing the demand of the age for more just and benign laws, by construing them according to the darkened and narrow views of the judges of the fourteenth century and not according to the intendment of legislators imbued with the enlightened ideas of the twentieth century. The fiction that the judges *declared* the "common law," and did not make it, is a mere decency. But if the statement were true, this would only carry back its origin to more ignorant and barbarous ages. That the "common law" is the "perfection of reason" when traced to such origin is impossible, and it can be fairly judged by its rulings as to married women which, long since abolished root and branch in England, both by the courts and by statutes, are still fondly clung to by some American courts as a clog upon progressive legislation. This is true as to other common-law rulings in every department of law. In truth, every betterment in the law has necessarily come from legislation, or by decisions of the courts denying the barbarous or worn-out rulings that are unsuited to the improved conditions of society and obnoxious to the juster ideas of a more enlightened age. There are of course principles of the common law which are eternally just and which will survive throughout the ages. But this is not because they are found in a mass of error or were enunciated by judges in an ignorant age, but because they are right in themselves and are approved, not disapproved, as much of the common law must be, by the intelligence of to-day.

As, however, common-law views as to the statute of women still survive among a few and are still urged as law, it would not be amiss should the General Assembly make such enactment in this regard as that body may deem just and proper. Every age should have laws based upon its own intelligence and expressing its own ideas of right and wrong. Progress and betterment should not be denied us by the dead hand of the Past. The decisions of the courts should always be in accord with the spirit of the legislation of to-day, which should not be misconstrued to conform to the views of dead and forgotten judges of centuries long overpast who were not always learned and able, and who, if wise, were rarely wise beyond the narrow vision of their own age. Nations, like men,

> "May rise on stepping-stones
> Of their dead selves to higher things."

BROWN, J., concurs in this opinion.

NOTE.—The General Assembly of 1913 enacted that a married woman can recover her earnings and damages for personal injuries for her own use, and without joinder of her husband in the action.