BARRERE *against* BARRERE.

Where a divorce, *a mensa et thoro,* is decreed, for cruel and inhuman treatment of the wife, by the husband, the separation will be made *perpetual,* with a *proviso*, that the parties may, at any time, by their mutual and voluntary act, apply to the Court for leave to be discharged from the decree. The wife, under the circumstances of the case, was allowed to retain the custody of an infant son, subject, however, to the future order and direction of the Court; and the husband was directed to pay a certain sum for the support of his wife and child, and the costs of the suit.

BILL for a divorce, *a mensa et thoro,* by the wife against the husband, on the ground of cruel and inhuman treatment.

*Dec. 13th.*

The parties were married in the city of *New-York*, in *May*, 1814, where they have since resided. The bill charged various acts of personal violence and brutality, on the part of the husband, in *April, July,* and *August*, 1818, which were proved; and that he was of a very hasty and ungovernable temper. The defendant, in his answer, admitted the acts charged, though in a much less degree, and alleged that they were owing to the disobedience and provoking language of the plaintiff. whom he charged with being unchaste and dissolute in her conduct, of which, however, there was no proof. After the last quarrel between them, on the 31st of *August*, 1818, when the defendant struck the plaintiff, and dragged her on the floor, by her hair, and would have beaten her with a stick, had not a person interposed, the plaintiff left the defendant's house, taking with her their only child, a boy between two and three years of age. The plaintiff alleged that she separated from her husband, because she considered her personal safety endangered by remaining with him; and that his evil example would be injurious to her child. She prayed for a decree of separation, *a mensa et thoro*; that she might be allowed to retain the custody of her child altogether, or, at least, for a time, and that the defendant should pay a sufficient sum for the maintenance of herself and child.

The defendant submitted to a decree of separation from bed and board, but prayed that his son might not be taken from him, and that he might not be ordered to provide maintenance for the plaintiff. The defendant had carried on the business of a confectioner.

The cause was submitted to the court on the pleadings and proofs, without argument.

*Mulligan*, for the plaintiff,

*Anthon*, for the defendant.

THE CHANCELLOR. This is a bill for a divorce from bed and board, upon the charge of cruel and inhuman treatment of the wife, by the husband.

The defendant, in his answer, admits occasional personal violence of a slight kind, and he attempts to excuse it.

The proof is very clear and decided in support of the charges in the bill. A quarrel arose, at one time, on the occasion of her wanting to take a ride in a coachee, with some female friends, because she insisted upon taking her child along with her, a boy of between two and three years of age. At that time, the defendant slapped her in the face, and struck her several blows with a whip, and caught her by the hair; and this was done in the presence of the domestics. At another time, he knocked her down with his hand, and beat her head against the floor, and pulled out a handful of her hair. At a third time, he threatened to beat her for staying over night, upon an errand on his account, in *New-Jersey*, though the testimony is perfectly clear that the absence was justifiable, and almost unavoidable.

There can be no doubt that these acts of bodily violence and harm, amount to that cruelty against which the law intended to relieve. Mere petulance, and rudeness, and sallies of passion might not be sufficient, but a series of acts of personal violence, or danger of life, limb, or health, have always been held sufficient ground for a separation by the canon law, which is the law of *England* upon this subject.

Though a personal assault and battery, or a just apprehension of bodily hurt, may be ground for this species of divorce, yet it must be obvious to every man of reflection, that much caution and discrimination ought to be used on this subject. The slightest assault or touch, in anger, would not, surely, in ordinary cases, justify such a grave and momentous decision. *Pothier* says, (*Traite du contrat. de marriage*, s. 509.) that a blow or stroke of the hand would not be a cause of separation, under all circumstances,

1819.

BARRERE
v.
BARRERE.

unless it was often repeated. The judge, he says, ought to consider if it was for no cause, or for a trivial one, that the husband was led to this excess, or if it was the result of provoking language on the part of the wife, pushing his patience to extremity. He ought, also, to consider whether the violence was a solitary instance, and the parties had previously lived in harmony. All these different circumstances will, no doubt, have their due weight in regulating and direcing the judgment of the court.

The plaintiff before me, may not have been always sufficiently discreet in her conduct to her husband ; and it is easy to perceive from the case, that the defendant is a man of strong and ungovernable passions, and that his mind was a little distempered with jealousy. The plaintiff has parents living in *New-York*, and the defendant appears to be a foreigner by birth ; and I should be led to infer, from a fact mentioned by one of the witnesses, that there was a considerable disparity of age between the parties. But there is nothing in the proof against the general demeanor or chastity of the plaintiff ; nor have any of the witnesses been able to point out a single act of egregious indiscretion on her part, since the marriage, in 1814.

The plaintiff is, therefore, entitled to the relief sought by the bill ; but for what time, and upon what terms and conditions a separation shall be decreed, is the next point for consideration ; and I have always regarded this as a delicate and difficult subject of jurisdiction. The *Statute concerning divorces*, (1 *N. R. L.* 197. sess. 36. ch. 102. s. 10, 11.) gives to this court the most enlarged discretion. If it shall appear that the defendant "is guilty of such cruel and inhuman treatment towards the plaintiff, or such conduct towards her as renders it unsafe and improper for her to cohabit with him, and be under his dominion and control, or that he has abandoned her, and neglects to provide for her, it shall and may be lawful for the Court of Chancery to decree a separation from bed and board, forever thereafter, or

for a limited time, as shall seem just and reasonable, or to make such other decree in the premises, as the nature and circumstances of the case require."

There is much embarrassment, on the ground of policy and public morality, with these partial dissolutions of the matrimonial union. It is throwing the parties back upon society, " in the undefined and dangerous characters of a wife without a husband, and a husband without a wife." *Puffendorf* (*De Jure Gent. et Nat.* lib. 6. c. 1. s. 22.) condemns them, except for a temporary purpose, and in order to punish and reclaim the offending party; and it is said the separation, *a mensa et thoro*, was entirely taken away by the first *English* reformers, as productive of great abuses and scandal in the marriage state. Opportunity ought to be left, and pretty freely left open, for reconciliation. This consideration will have the more weight, if the unhappy parties have a common offspring to be afflicted by their infirmities, and especially, if " wounds of deadly hate" have not pierced too deep into their bosoms. I am persuaded, that it is best, in such cases, to give the parties the means, though they may not, at present, indulge even the wish of reconciliation. There are objections to a separation for a precise or limited time, though such decrees have been rendered. It may inspire a constant fear on the one side, and nourish hopes of revenge on the other. It rather appears to me, to be the most kind and salutary course, to declare the separation perpetual, with a power, however, reserved to the parties, to come together, under the sanction of the Court, whenever they shall find it to be their mutual and voluntary disposition. This will be leaving them to the free operation of contrite affections, and will make the reunion to rest (if it should ever take place) upon a strong sense of its fitness and propriety. I entertain no doubt of my power to annex such a condition to the decree; and, indeed, the reconciliation of the parties does away the force

of a decree of separation from bed and board, by the canon or ecclesiastical law, among the nations of *Europe.*

The decree of divorce, *a mensa et thoro*, by the *English* law, is said to be either for a time, or without limitation of time. (*Burn's Eccles. Law,* tit. *Marriage,* c. 11. s. 4.) Yet, by the form of the decree, the separation is only until a reconciliation : *In omni sententia lata inseritur hæc clausula, Dictos N. et M. ratione sævitiæ allegatæ et probatæ, a thoro, mensa, et mutua cohabitatione, absque obsequiorum conjugalium impensione, donec et quosque duxerint invicem reconciliandos, et non aliter, neque alio modo, separamus.* (*Oughton's Ordo Judiciorum,* tit. 215. s. 3.)

We have a judicial determination upon this point, in the case of *Vanthienen* v. *Vanthienen,* (*Fitzgib.* 203.) which was heard upon appeal in the *Court of Delegates,* in 1731. The wife had libelled her husband in the Consistory Court of *Dantzick,* in the then kingdom of *Poland,* for cruel treatment, and a sentence of divorce, *a mensa et thoro,* was pronounced ; it was further decreed by the Pope's Nuncio at *Warsaw,* that the husband should not have any power over her estate ; and we are led to infer from the case, that the decree was, afterwards, confirmed in the Chancery of *Poland.* The question raised by the case in *England,* was, whether the husband, after the decree in *Poland,* had a right to interfere with her administration of a former husband's estate, who, by will, had given a legacy to her, and compel her to administer thereon, or to be admitted to administer for her. The wife relied upon this decree of divorce in bar of his pretension, and she had constituted an attorney, to whom she prayed that such administration might be granted. The husband replied, that they were reconciled subsequent to the divorce, and insisted, that this reconciliation annulled the sentence, and rendered it inoperative. It was held, upon the argument, by the husband's counsel, (Dr. *Strahan,* the translator of *Domat,* was one of them,) to be the settled law, that the subsequent reconcilia-

+ *quousque*

tion annulled the sentence, and restored all things *ad pristinum statum.* The other side seemed to admit this general result of the reconciliation, and only contended, that it did not affect the right of property which had been vested under the decree. The Court pronounced a decree in favour of the husband, and must have admitted the doctrine in support of his claim.

By the *French* law, taken from one of the *Novels* of *Justinian,* the wife judicially convicted of adultery, was sentenced to imprisonment in a monastery; but the husband within two years might reclaim her; and if he did not, she was to remain in the convent for life, and to be clothed in the habits, and subjected to the austerities of the house. But it seems to have been settled, that the husband, notwithstanding this alteration in her condition, might still, at any period of his life, reclaim her, and this was deemed just and reasonable, as the prosecution was at his instance, and upon his account. It was one of the *Novels* of *Justinian,* (*Novel,* 134. c. 10.) that fixed the period of two years, for the husband to recover his wife, but the thirty-second *Novel* of the Emperor *Leo,* mitigated the severity of the former ordinance, and it has since been understood, that the husband's right to reclaim his wife was indefinite as to time. *Non intra biennium, sed perpetuo, de Jure canonico, potest revocare.* (*Fournel's Traité de l' Adultere,* p. 308, 309. 320, 231. 326, 327, 328. *Inst. au Droit. Francois par Argou,* tom. 2. 357.) That the husband's time for reconciliation is unlimited, was admitted and shown by *M. Fournier,* and by *M. Talon,* the *Avocat General,* in their ingenious and learned pleadings in the case of *Thome* and *Joisel,* which is reported at large in the *Causes Celebres,* (tom. 10.) under the title *Feme Adultere,* and of which a copious abridgment is given in *Ferriere's Dict.* tit. *Autentiquer une feme.* It is a little extraordinary, that so accurate a writer as *Pothier,* should not have adverted to this well-settled improvement of the canon law, and that he should confine the

*French* law of Divorce.

+ 331

1819.

BARRERE
v.
BARRERE.

husband's right to redeem his wife, to the period of two years, according to the rigid and exploded Novel of *Justinian*. (*Traite du Contrat de Marriage, n.* 527.)

The *French* law to which I have referred, is thus analagous to the *English* canon law, by equally admitting a subsequent reconciliation to control these judicial decrees of separation from bed and board. My object is to show the prevalence and acknowledged policy of that measure, and the practice under the *French* law is, therefore, a case in point, for it is well known, that under the former laws of *France*, divorce, in any case, signified only a separation of goods, and from bed and board, and that the marriage contract, according to the doctrine of all *Roman Catholic* countries, was considered a sacrament, and held indissoluble during the life of the parties. But I ought here to observe, that the analogy has now ceased; for the law of marriage underwent a radical change at the period of the *French* revolution, and in an early stage of it, the revolutionists almost declared war against the marriage contract. The *Code Napoleon* checked, indeed, the unlimited freedom of divorce, but, with the exception of the new *Prussian Code* published at *Berlin* in 1794, it still left the marriage tie in a more relaxed state than is permitted in other nations under the influence of christianity. Marriage is absolutely dissolved by divorce, which may be not only for many reasonable causes which are specified, but for no cause whatever, except the mutual and persevering consent of the parties, duly declared under certain checks and provisions.

Law of Holland.

If we pass to *Holland*, we shall find these divorces *a mensa et thoro*, in use under the sanction of the civil magistrate; and the law of *Holland*, is, in this respect, very analagous to our own. The decree, according to *Bynkershoeck*, (*Quæst. Jur. Priv.* lib. 2. ch. 8.) is always with the proviso, *sub spe reconciliationis*, and the jurisdiction of the subject in their temporal courts, is under the influence of the canon law. *Ex causis matrimonialibus aliqua in foro nostro sit juris*

*pontificii auctoritas.* (*Ibid,* ch. 10.) The divorce, *a mensa* *et thoro,* is for great cruelty, or imminent personal danger, and a distribution of property is made between the parties, and the matrimonial tie continues : *Interdictis utrique aliis* *nuptiis.* (*Voet. Com. de divortiis et repudiis,* s. 16, 17.)

My inference from this review is, that by the common the law of *England,* and of other nations on the continent where the canon law prevails, a time for reconciliation is left open to the parties upon these qualified divorces from bed and board; and the indulgence is founded in sound policy, and dictated by benevolence. The question then arises, whether the decree ought not to pursue the *formula* given in *Oughton,* and declare a separation until the parties shall be reconciled to each other. I assume that I have competent power to make such a decree, for the statute authorizes the Chancellor to decree a separation "forever," or, "for a limited time," or, to make "such other decree" as the case may require. But such a general decree seems to be of too loose a texture, and to be destitute of the requisite sanction. It separates the parties *until they are reconciled,* and leaves that event open to dispute. I should really be apprehensive of exposing the court to some portion of that sarcasm which Lord *Thurlow,* in arguing the *Duchess of* *Kingston's case,* bestowed upon matrimonial causes, in the Ecclesiastical Courts, when he spoke of the frivolousness of their proceedings, and the vanity of their decrees. I prefer that the sentence shall be binding and effectual, until the parties shall have applied to the Court, and received, upon just grounds, a judicial recognition of the certainty and sincerity of their reconciliation. The parties should be encouraged to look forward to that cheering event; and to escape, as soon as possible, from the perilous and painful situation in which they are placed by the decree. The canon law, with a paternal solicitude, well worthy of adoption, (*Burn's Eccl. Law,* tit. *Marriage.* ch. 11. s. 4. *Oughton's Ord. Jud.* tit. 215. s. 4.) requires that a monition

+ *canon*

1819.

BARRERE
v.
BARRERE.

Form of decree of divorce *a mensa et thoro.*

Formula of the
Ecclesiastical
Courts.

be inserted in all sentences for divorce, *a mensa et thoro*, that the parties must live chastely, and that neither of them, during the life of the other, can contract marriage with any other person.

These kind admonitions are peculiar to the Ecclesiastical Courts in the exercise of their jurisdiction over matrimonial causes; and if a bill of this kind should fail from the want of proof, the courts do not, even in that case, send the wife back, without due care for her reception. The monition is not only " that the husband shall take her back," but " that he shall treat her with conjugal kindness." (*Vide* Sir *Wm.* *Scott's* opinion in the Consistory Court, in Doctors' Commons, in *Evans* v. *Evans.*) Since the whole of this delicate jurisdiction has been recently committed to this Court, I have no better source to which I can resort for the guidance of my judgment, in this new path of duty, than to the doctrines of the *English* ecclesiastical or canon law. It is a supplemental part of the common law, and seems to be a brief, chaste, and rational code. It forms, in some respects, a contrast to the unwieldy compilations which constitute the canon law of the *Roman Catholic* countries, and which contain very circumstantial, and many very unprofitable regulations, on the subject of marriage and divorce. (*Vide, Corpus Juris Canonici, par Gibert,* edit. *Geneva,* 1735, tom. 3. *De Sacramentis,* tit 12. *de legitimo usu matrimonii,* tit. 13. *De impedimentis matrimonii,* tit. 14. *de divortiis.*)

It is further understood to be the law, (*The Parishes of St. George and St. Margaret,* 1 *Salk.* 123.) that if the wife be separated from the husband by a divorce, *a mensa et thoro,* the children she may have during such separation are bastards, because a due obedience to the decree is to be presumed until the contrary be shown. If, however, a cohabitation between the husband and wife be made out in proof, the offspring would then be legitimate, for the relation of husband and wife is not dissolved. It only undergoes a very inconvenient suspension, and which is intended to operate as

a continual invitation to the parties to return to their first love.

Another interesting and difficult question is as to the disposition of the child, and the allowance to be made to the wife. It is to be observed that the husband is, in this case, the party egregiously in the wrong, and he is solely responsible for the rupture of the conjugal tie. It appears, also, that his employment as the keeper of a porter-house or ice-cream garden, is not the most favourable for a propitious influence upon the habits and manners of his son. I shall, therefore, in this respect, also grant the prayer of the bill, and consign the care and custody of the child to the mother. But the statute upon this subject (act, sess. 38. ch. 221.) wisely allows these orders to be varied or annulled, at any time thereafter, upon sufficient cause. The allowance to the mother, for the child, ought to be quite small, in the first instance, and more especially as some weight ought to be attached to the consideration, that the father may be greatly afflicted by the loss of the presence and guardianship of his son, and the mother will have most persuasive motives to industry and economy, by the duty and blessing of such a charge.

The defendant would not, probably, be able to bear a large pecuniary allowance to his wife, either for her or her child's maintenance. It is said, that the profits of his establishment will enable him to maintain himself and his wife, but the witnesses allude to the case of their living together, and contributing their united efforts for their mutual support. He might be able to maintain her in his own house, and yet not be able to pay a considerable annuity. He owns a leasehold estate, on which he has expended considerable money, and which is charged with a ground rent, and a mortgage debt. Indeed, one of the witnesses supposes that the mortgage, and another bond debt, would sweep away his interest in the land which he holds under a short lease. If he pays 200 dollars a year, towards the mainte-

1819.

BARRERE
v.
BARRERE.

Disposition of the children in cases of divorce *a mensa et thoro.*

Allowances to the party for maintenance.

nance of the wife and child, it is as much as the circumstances of the case would seem to justify; and if I am mistaken in the amount either way, the parties, or either of them, can, at any time, apply for relief. The usual and proper course, is to refer questions of this kind to a Master, but as the proofs are all before me, and the allowance is so entirely under future discretion, and subject to alteration, I have not thought it necessary in this case, to detain the cause by the delay and expense of a reference upon that point.

*Decree.*

The following decree was entered : " It appearing from the pleadings and proofs, that the defendant has been guilty of cruel and inhuman treatment of the plaintiff, by repeated acts of personal violence, so as to render it unsafe and improper, under existing circumstances, for her to cohabit with him, or to be under his dominion and control. It is thereupon *ordered,* &c. that the plaintiff and defendant be separated from bed and board forever; provided, however, that the parties may, at any time hereafter, by their joint and mutually free and voluntary act, apply to the Court for leave to be discharged from this decretal order. And it is hereby declared to be the duty of each of them to live chastely during their separation, and that it will be criminal, and an act void in law, for either of them, during the life of the other, to contract matrimony with any other person. And it is further *ordered,* &c. that the plaintiff, according to the prayer of her bill, shall be entitled to, and be charged with, the custody, care, and education of the infant son of the parties in the pleadings mentioned, provided, always, that this order for the custody, care, and education of the said infant, may, at any time hereafter, be modified, varied, or annulled, upon sufficient cause shown. And it is further *ordered,* &c. that the defendant pay to the plaintiff 200 dollars, a year, to be computed from the date of this decree, in half yearly payments, to be applied towards the support and maintenance of the plaintiff and her son, and that this

allowance is to continue until further order, and be subject to variation, as future circumstances may require. And it is further *ordered*, that the defendant pay to the plaintiff the costs of this suit, to be taxed, and that she have execution therefor, according to the course and practice of the Court."