CHARLOTTE FREEMAN ET AL. v. RODOLPH BELFER ET AL.

(Filed 23 May, 1917.)

**1. Husband and Wife—Title by Survivorship—Unity of Person.**

The doctrine of title by survivorship recognized by our courts, between husband and wife holding lands in entirety, is not founded upon the common law, but upon the scriptures, declaring them to be "one flesh."

**2. Same—Constitutional Law—Statutes—Married Women—Separate Property.**

Our Constitution and statutes relative to the property and rights of married women do not affect the doctrine of title by survivorship in lands held by husband and wife in entirety.

**3. Husband and Wife—Title by Survivorship—Divorce, a Mensa.**

A divorce *a mensa et thoro* does not sever the marital relationship of husband and wife so as to make them tenants in common of lands held by them in entirety, or to effect a change in the doctrine of title by survivorship between them.

CLARK, C. J., and BROWN, J., dissenting.

CIVIL ACTION, tried before *Carter, J.,* at December Term, 1916, of RANDOLPH.

This is an action to recover land, tried on the following agreed statement of facts:

1. That this action was instituted in the Superior Court of Randolph County on 16 August, 1916, for the recovery of the land described in a deed hereinafter set forth, and all the defendants were personally served with summons.

2. That prior to 31 July, 1890, Travis Smith and Louisa Smith were legally married, and at that time they were husband and wife.

3. That on 31 July, 1890, B. B. Barnes executed a deed conveying the land in controversy to the said Travis Smith and his wife, Louisa Smith, in fee by entireties, which deed was duly registered on 1 August, 1890.

4. That at March Term, 1907, the said Travis Smith obtained judgment of divorce *a mensa et thoro* from the said Louisa Smith on the ground of abandonment.

5. That said Travis Smith died intestate in the year 1912, and the plaintiffs, who are his sisters, are the only heirs at law.

6. That Louisa Smith survived her husband and died intestate in the year 1916, and the defendants, who are her brothers, are her only heirs at law.

7. The plaintiffs contend that they are the owners of said land or at least of one-half thereof as tenants in common, and the defendants deny that the plaintiffs own any interest therein, and contend that they are sole seized of said land.

His Honor held that a divorce *a mensa et thoro* servered the marriage relation and that the plaintiffs were entitled to recover one-half of the land in controversy, and the defendants excepted and appealed.

*Hammer & Kelly for plaintiff.*
*J. A. Spence for defendant.*

ALLEN, J. The idea that husband and wife are one, or, as generally expressed, of the unity of the person, does not have its origin in the common law. It dates from the Garden of Eden, when it was declared, "They shall be one flesh" (Gen., 2:14), and it has been reaffirmed and preserved in the Gospels and the Epistles. "Wherefore they are no more twain, but one flesh" (Matt., 19:5); "They twain shall be one flesh" (Mark, 10:8); "They two shall be one flesh" (Eph., 5:31).

It is on the doctrine of the Unity of Person that estates by entireties, with the right of survivorship, rest. *Motly v. Whitmore,* 19 N. C., 537; *Topping v. Saddler,* 50 N. C., 360; *Long v. Barnes,* 87 N. C., 334; *Harrison v. Ray,* 108 N. C., 216; *Bruce v. Nicholson,* 109 N. C., 204; *Gray v. Bailey,* 117 N. C., 442; *Ray v. Long,* 132 N. C., 891; *McKinnon v. Caulk,* 167 N. C., 412.

The Court says, in *Motly v. Whitmore, supra,* which is approved in the other cases cited: "When lands are conveyed to husband and wife, they have not a joint estate, but they hold by entireties. Being in law but one person, they have each the whole estate as one person; and on the death of either of them the whole estate continues in the survivor," and in *McKinnon v. Caulk,* after citing a number of cases: "A perusal of these and other authorities on the subject will disclose that the estate in its essential features and attributes is made dependent on oneness of person of the husband and wife."

Perhaps the fullest and clearest statement is that of the present Chief Justice in *Harrison v. Ray,* 108 N. C., 216, written after the adoption of the present Constitution, in which, following *Pearson, J.,* in *Tapping v. Sadler,* he advances a step beyond his predecessors and adds a fifth unity to the four common-law unities, that of the unity of the person of husband and wife. He says: "When realty is devised or conveyed to husband and wife, they take by entirety, and upon the death of one the whole belongs to the other by right of survivorship. 2 Bl., 182; *Long v. Barnes,* 87 N. C., 329; *Simonton v. Cornelius,* 98 N. C., 433. The act abolishing survivorship in joint tenancies, Act

1784, ch. 204 (The Code, par. 1326), does not apply to such cases. *Motley v. Whitemore,* 19 N. C. (2 D. and B.), 537; *Todd v. Zachery.* Busbee's Eq., 286; *Woodford v. Higly,* 60 N. C. (1 Winston), 234. Indeed, it is held that a conveyance to husband and wife has a fifth unity added to the four common-law unities recognized in joint tenancy, *i. e.,* unity of person. *Topping v. Sadler,* 5 Jones, 357; Freeman on Cotenancy and Part., par. 64."

These authorities and others also establish the principle that changes as to the property rights of married women brought about by modern constitutions and statutes have neither *destroyed* nor *altered the nature* of the estate by entireties.

*Hoke, J.,* speaking for a unanimous Court, said in the *McKinnon case:* "It has been held in several well considered decisions of this Court that our Constitution and the later statutes relative to the property and rights of married women have not thus far destroyed or altered the nature of this estate by entireties, a 'conveyance to a husband and wife,' *Jones v. Smith,* 149 N. C., 318; *West v. R. R.,* 140 N. C., 620; *Bynum v. Wickham,* 141 N. C., 95; *Bruce v. Nicholson,* 109 N. C., 205; *Ray v. Long,* 132 N. C., 891."

There is some conflict in the authorities from other States as to the effect of the Married Woman's Property Acts on estates by entireties, but the better opinion and weight of authority is in favor of the position adopted by this Court.

The author says in 13 R. C. L., 1101: "The Married Woman's Property Acts have in some cases in this country been given the effect of abolishing the common-law estate by entireties, and under such a construction a conveyance to a husband and wife creates the same estate in the parties as if it had been made before the coverture; that, being invested with capacity of taking by entireties, the reason of the rule of the common-law, that they should take by entirety—*per tout,* not *per my*—has ceased to exist. This also seems to be the effect given to such statutes in England and Canada. The better opinion of this country, however, is that the operation of these statutes should be limited to the separate property of married women, leaving unaffected and unimpaired the previous law regarding the creation, existence, and essential attributes and consequences of estate by entireties," and there are more than twenty cases cited in support of the text.

*Clark, C. J.,* calls attention in *Bynum v. Wicker,* 141 N. C., 86 (1906), to the failure of the General Assembly to change the estate by entireties into a cotenancy, and concludes that in the absence of legislative action the estate possesses the same properties as at common law. He says: "This estate by entirety is an anomaly, and it is perhaps an oversight that the Legislature has not changed it into a cotenancy,

as has been done in so many States. This not having been done, it still possesses here the same properties and incidents as at common law."

The same learned judge also says in *West v. R. R.,* 140 N. C., 620: "In *Long v. Barnes,* 87 N. C., 333, it is held that the Constitution, Article X, sec. 6, as to the rights of married woman, did not 'destroy or change the properties and incidents belonging to the estates' held by entireties," and adds, after discussing the incidents and properties of the estates: "These are the incidents and properties of an estate by entirety when (as in this State) there has been no change by statute, and upon the above authorities the plaintiff can maintain this action without joining the wife. She is not entitled to sue for this damage nor to share in the recovery. If any change in the incidents and properties of this anomalous estate is desirable, legislation must be had upon it."

If, therefore, the estate by entireties rests and is dependent upon the oneness of the person of husband and wife and not upon property rights, and if the changes in the rights of property of married women have not destroyed or affected the nature of the estate, it follows that no decree can change the estate to a tenancy in common, unless it severs the marriage relation and makes the husband and wife two persons and not one.

Does a decree *a mensa et thoro* have this effect?

A decree *a mensa et thoro* does not purport on its face to dissolve the bonds of matrimony, and it is in legal effect simply a decree of separation.

As said in *Evans v. Evans,* 7 L. R. A., 448 (43 Minn.), the marriage relation is merely suspended, not annulled, and in *People v. Cullen,* 44 L. R. A., 423 (153 N. Y., 629), the parties still remain husband and wife in the eye of the law, and the authorities are practically unanimous in favor of the principle, as appears from the following note to *Boykin v. Bain,* 85 Am. Dec., 360: "A divorce from bed and board does not put an end to the marriage ties, or destroy the relation of husband and wife; *Capel v. Powell,* 17 C. B., N. S., 743; *Moore v. Barber,* 5 Giff., 43; *Barber v. Barber,* 21 How., 582; *Ellison v. Mayor,* 53 Ala., 558; *Gee v. Thompson,* 11 Ann., 657; *Kriger v. Day,* 2 Pick., 316; *Dean v. Richmond,* 5 *id.,* 461; *Barrere v. Barrere,* 4 Johns. Ch., 187; but merely suspends certain of the mutual rights and obligations of the parties: *Clark v. Clark,* 6 Watts. and S., 85; *Barrere v. Barrere, supra;* such a divorce having the effect to destroy the right of cohabitation, and if the parties again live together and become reconciled as husband and wife, the effect of a divorce *a mensa et thoro* is destroyed, and the marriage relation continued or resumed; *Liddell v. Liddell,* 22 La. Ann., 9; *Gee v. Thompson,* 11 *id.,* 657; *Hokamp v. Hagaman,* 36 Md., 511;

*Kriger v. Day,* 2 Pick., 316; *Dean v. Richmond,* 5 *id.,* 461; *Nathans v. Nathans,* 2 Phila., 393; *McKarracher v. McKarracher,* 3 Yeates, 356; *Tiffin v. Tiffin,* 2 Binn., 202. In case of divorce a *mensa et thoro,* the parties cannot marry again, as the relation of husband and wife has not ceased; *Barber v. Barber,* 21 How., 582; *Savoie v. Ignogoso,* 7 La., 281; *Wait v. Wait,* 4 N. Y., 95; and for the same reason such a decree does not remove incapacity to testify on the part of either; *Kemp v. Downham,* 5 Harr. (Del.), 417."

We are therefore of opinion, as the estate by the entireties rests upon the unity of person, and as this estate is not destroyed or affected by the statutes relating to the property rights of married women, and as a divorce *a mensa et thoro* does not dissolve marriage, and, therefore, does not destroy the unity of person, that it was error to hold that the plaintiffs were the owners of any part of the land in controversy, and that upon the death of the husband the estate belonged to the wife by right of survivorship and descended to the defendants as her heirs.

We would be glad to "bend out" in this case and decide in favor of the heirs of the husband, as the record shows he obtained a divorce *a mensa et thoro* from his wife because she had willfully abandoned him, but as the General Assembly after repeated suggestions has refused to change the law, we must declare it as we find it.

Reversed.

NOTE.—Petruchio was engaged in the difficult task of taming a shrew (this was in the barbarous times when there were shrews), and he adopted rough measures and intemperate language.

He succeeded where the gentler methods of father and sister had failed, and Shakespeare has him to say in conclusion:

> "He that knows better how to tame a shrew
> Now let him speak: 'tis charity to show."

CLARK, C. J., dissenting: The question here presented, whether a divorce *a mensa et thoro* constitutes husband and wife tenants in common of land held in entirety, has never hitherto been decided in this Court.

When an estate is conveyed to two or more persons under our law it makes them tenants in common. There is no exception to this by any statute; but in England, formerly (though not now) an exception was made, not by any statute, but by the opinion of judges who held that, as the law then stood, the property rights of the wife being suspended during coverture, that if a conveyance or devise was made to two persons who happened to be husband and wife, the husband should have the whole of the estate during his lifetime and at his death it should go to the survivor. Thus by judicial enactment was created the "estate by entireties."

By our Constitution adopted in 1868—now forty-nine years ago—the former conception of the extinction of the wife's right of property during the marriage was utterly abolished and it was provided Article X, section 6, that the property of the wife, either at marriage or thereafter acquired, should be and remain her sole and separate property as if she were unmarried. It therefore follows that, if the Constitution governs, a conveyance or devise to a man and his wife stands as if the wife was still single, and they hold as tenants in common.

When the same abolition of the common law as to property rights of husband and wife was enacted elsewhere, it was held in England, Ireland, Canada, and twenty-eight States of this Union that the result was to make husband and wife, when grantees or devisees of the same property, tenants in common. 2 Lewis Bl. Com., 182, note 18; 30 L. R. A., 314-319; 21 Cyc., 1201, 1202. It should have been so held in North Carolina also, but the judges held to the contrary, when the question was first presented here, and that opinion has been followed ever since, though more than once the Court has suggested to the Legislature the propriety of abolishing entireties.

This question, however, is not raised by this appeal. But if it had been held otherwise, no judge or court is bound by an erroneous precedent, but should correct it. In *McKinnon v. Caulk,* 167 N. C., 411, the question was presented as to the effect of an absolute divorce, and it was held that in such case the husband and wife were remitted to hold the property as tenants in common. This was in accordance with the holding in all other States except two.

The question now presented is as to the effect of a divorce *a mensa et thoro.* This has not been decided in this State, and we should decide the question upon the language of the Constitution and upon the reason of the thing in analogy to *McKinnon v. Caulk, supra.* It is unrighteous for the husband to receive the rents and profits from the wife's half of the land after such divorce.

Conceding that a conveyance or devise to two persons, who happen to be husband and wife, can be construed, therefore, contrary to its language, and that the wife cannot have the constitutional right to hold her property therein as if "unmarried," the only plausible reason is that as the husband is charged with the wife's support, therefore during their joint lives the income from such property should go to the husband to be applied to their joint support. Any argument that is based upon "being one flesh" is purely fanciful, for it is untrue in fact, and, since our Constitution of 1868, untrue in law. Therefore, when there is a divorce from bed and board the husband being discharged from the support of his wife as fully as in a divorce *a vinculo* (except as to the alimony, which when allowed should be paid out of the hus-

band's own property), it follows that the wife is entitled to her half of the income from the joint property during their joint lives, and to partition. There is no precedent against this, for the matter is absolutely *res nova,* in this State at least, and we should follow the Constitution and the reason of the thing.

It has been stated by a most distinguished judge and law writer that in North Carolina, notwithstanding the provision in our Constitution of 1868 which confers equality of property rights upon married women, the Supreme Court of this State has followed in every decision the former judicially created doctrine of the inferiority of the wife and the submergence of her existence in that of the husband except and until there has been some act of the Legislature in conformity with the spirit and letter of the Constitution. A long list of authorities bearing out this statement can be easily appended. These decisions have not always been against the individual woman who was litigant, because the protection of being *non sui juris* (which is another word for being incompetent and incapable) has sometimes been claimed for her by her lawyer; but the decisions have usually, if not always, been against the claim, by whichever side and whenever set up, that the woman is by the Constitution held competent and has the same property rights as if she had remained unmarried. We have held that a man has a right to slander the good fame of his wife, though he is indictable for doing the same as to any other woman, *S. v. Edens,* 95 N. C., 693. We have held that the earnings of the wife by her needle belong to her husband, *Syme v. Riddle,* 88 N. C., 463, notwithstanding the language of the Constitution which guarantees that all property "acquired in any manner whatever, after marriage as well as before," shall remain her sole property, and even that damages for loss of her limb and physical and mental suffering belong to her husband, and cannot be recovered by her, *Price v. Electric Co.,* 160 N. C., 450. In these respects, and in some others, statutes have been passed since requiring conformity to the Constitution, but statutes have not yet cured all discriminations against the wife as fully as the Constitution has done, and especially it has not yet done so as to the judge-created "estate by entireties." But no decision has until now extended that estate to a case like this, where there has been a divorce from bed and board.

The ruling by which a devise or conveyance of property jointly to husband and wife becomes the sole property of the husband during his life is without any authority in any statute here or in England, but was created solely by men judges in the barbarous days in England, and was the expression by them of the sentiment which still prevails among savages, based upon their idea of the superiority of men and the incompetence and incapacity of women, and pictured the state of such

society where men are loafers and women are drudges doing all the work, whose results are appropriated by the men. The state of the English law as to wives, which survived to his day and far later, from those ruder times when the judges (not Parliament) created the discriminations against them, is accurately expressed by Shakespeare, a good lawyer (whether his works were written by Lord Bacon or not), when he made Petruchio say of his wife:

> "I will be master of what is mine own!
> She is my goods, my chattels; she is my house,
> My household-stuff, my field, my barn,
> My horse, my ox, my ass—my anything."

Of a piece with this was the doctrine, also judge-made, for there was never statute for it, that if a man beat his wife "with a switch no larger than his thumb" the court would not punish him. The last of these was still held law in this State (*S. v. Black,* 60 N. C., 262; *S. v. Rhodes,* 61 N. C., 455) till abolished, after the Constitution of 1868, by the decision in *S. v. Oliver,* 70 N. C., 60 (in 1874), long after this was done in England, while the doctrine as to the annihilation of the property rights of the wife by her marriage was abolished in England and everywhere else, and as clearly by our Constitution in 1868 as language could make it. *Walker v. Long,* 109 N. C., 510.

The statement of Adam (not of God), 2 Gen., 24, "that husband and wife should be one flesh" was figurative and cannot deny property rights to married women in North Carolina contrary to our Constitution under the conditions of society which prevail since Adam's expulsion from Paradise. Adam in a moment of exaltation made a statement of his high intentions of equality with his wife in all things. As a literal fact, they were not made one flesh, and could not be. Even as to union of interests, which was meant, decrees for divorce have been signed by every Superior Court judge in North Carolina.

Indeed, the expression as quoted in Mark (ch. x, v. 8), "They *twain* shall be one flesh," and to the same purport in Matthew (ch. xix, v. 5), and "They *two* shall be one flesh"; Eph. (ch. v. verse 31, which is explained in verse 32 to apply to the church), show the equality and not the submergence of the wife in the husband as the one being resulting from the union. It would be as logical and as just to say that the wife was the one, and, therefore, that when property is conveyed or devised to her husband and herself, that she should have all the rents and profits during her lifetime, and that on the husband's death she should have the whole in fee simple, as the contrary ruling by men judges that the husband should have all the proceeds of the joint porperty during his lifetime. Our property rights are fixed by our Constitution and laws, and not by the law of Moses.

The obscure and utterly unknown judge who in the remote past evolved the doctrine of entireties out of his own consciousness doubtless based the idea upon the above citations; but neither he nor the Mosaic Law as to property rights can control the provision of our own Constitution which confers upon married women, expressly, the same rights "as if unmarried." It would be as logical to hold that the modern enlightened laws of war should be controlled by the requirements of the old Scriptures that the captives taken in war should be utterly slain—men, women, and children, 1 Sam., ch. 15, or to follow other requirements which a sect in England and Scotland once advocated and even in admiration named some of their children "Hew-Agag-in-Pieces." Or, the statement, "Thou shalt suffer no witch to live," which Blackstone, as late as 1769, said (4 Com., 60) to deny the existence of whom is "to flatly contradict the revealed Word of God in various passages, both in the New and Old Testaments," and that the offense is "punishable with death by burning."

A landowner in having his land surveyed found that the distance called for between two points in his deed was greater than by a straight line between those two points, and proposed "to bend out" into his neighbor's field in order to "get his poleage." The neighbor promptly replied: "Why don't you *bend in* to get your poleage?" If it is absolutely necessary when there is a conveyance or a devise to a man and his wife of property jointly that one shall have the whole of it, why should it not be the wife instead of the husband? There is as much reason for one as for the other.

When the Constitution of 1868 provided that upon marriage a woman should retain all her property which she then had or might thereafter by any means acquire, there remained no longer any reason to deprive the wife of her half interest in realty conveyed or devised to her and her husband jointly by confiscating it all for the benefit of the husband. This was at once so held in England, Ireland, Canada, and twenty-eight States above cited.

In *Mial v. Ellington,* 134 N. C., 131, this Court reversed the ruling in *Hoke v. Henderson,* 15 N. C., 1, though that had been made by a very strong Court (*Ruffin, Daniel, and Gaston*) and had been in force for nearly three-quarters of a century and had been cited with approval more than sixty times. If notwithstanding the express provision of the Constitution, a similar act of justice cannot be rendered to wives; still there can be no reason why the Constitution should be further disregarded by extending for the first time such ruling to cases where there is a divorce from bed and board.

At a time when women are no longer disposed to submit to enthroned wrong and to suffer in silence as their mothers did; when all five political

parties have pledged themselves to confer full suffrage upon them, and in nineteen States women already have the right to vote for President and in twenty other States suffrage in lesser matters, and the President and Cabinet and the political leaders in all parties are pledged to full and equal suffrage; when the irresistible tide of long delayed justice is sweeping over all other countries as well as in ours, it is surely not an auspicious hour by judicial construction to extend in this State the discrimination against women to new fields where it has not heretofore obtained and further restrict the constitutional guarantee of their personal or property rights.

The estate by entireties is further unconstitutional because it exempts from claims of creditors property not included in the homestead allotment.

NOTE.—The utter absence of rights in the wife at common law, as against the husband correctly quoted by Petruchio, cannot be justified against all wives because *his* wife was a shrew. Even those who illogically condemn women to inferiority and indignities as punishment inherited from Eve (for men as well as women are descended from her) will not support that view. In this case the aggregate of the wife's rents and profits of which she was deprived may well have exceeded what came to her at last by the chance of her being the longest liver. Moreover, all wives do not survive their husbands.

BROWN, J., dissenting: I am of opinion that when there is a separation for life between husband and wife, sanctioned by law, as in divorce *a mensa,* the interest of the wife in property held in entirety should be enjoyed by her free from the control of the husband. There is as much justice and reason in applying this rule to a divorce *a mensa* as to one *a vinculo.* If we do not so hold, then the husband, although legally separated from the wife, will have the control of the property held in entirety and will not be accountable to her for the rents and profits. This is manifestly unjust to the wife, for it is as much her property as the husband's.

The case has never been presented before this Court before. I think it best to settle the matter by holding that when husband and wife are separated by decree *a mensa* they at once become tenants in common of property held in entirety.

For this reason I am unable to concur in the judgment of the Court.