M. L. YOUNG v. J. W. NEWSOME AND SARAH NEWSOME.

(Filed 10 November, 1920.)

**1. Husband and Wife—Married Women—Wife's Torts—Husband's Liability—Statutes.**

The rule of the common law that made the husband liable for the torts of his wife, though living separate at the time, has been modified by statute so as to make him liable only when they are living together. Rev., 2105.

**2. Same.**

Rev., 2105, giving a right of action against the husband for the tort of the wife, while they are living together, modifying the common law, is not affected by the courtesy act of 1848, the constitutional provision vesting in the wife her separate estate; the marriage act of 1871-72 and other statutes giving her many of the rights of a *feme sole;* the Martin Act of 1911, ch. 109, allowing her to contract in certain cases as if unmarried, and the act of 1913, ch. 13, giving to a married woman her personal earnings, with right to sue alone for personal injuries, etc.; for the rights thus given are additional ones, without changing the common law principles as modified by the statute. Rev., 2105.

CLARK, C. J., concurring in opinion.

APPEAL by defendant from *Long, J.,* at the March Term, 1920, of FORSYTH.

This is an action to recover damages for slander against two defendants, who are husband and wife and living together.

The jury returned the following verdict:

"1. Did the defendant, Sarah Newsome speak of and concerning the plaintiff, M. L. Young, the words in substance, as alleged in the complaint? Answer: 'Yes.'

"2. If so, what amount of compensatory damage is the plaintiff entitled to recover of the defendants, Sarah Newsome and J. W. Newsome? Answer: 'Six hundred and fifty dollars ($650).' "

His Honor held that the husband was liable on the verdict for the tort of his wife, and entered judgment accordingly, and the defendants excepted and appealed.

*Jones & Clement and McMichael, Johnson & Hackler for plaintiff.*
*Sapp & McKaughn and Dallas C. Kirby for defendants.*

ALLEN, J. At common law the husband was liable for the tort of his wife, although committed without his knowledge or consent and in his absence, and although living separate at the time, on the ground that "as her legal existence was incorporated in that of her husband, she

could not be sued alone, and if the husband was protected from responsibility the injured party would be without redress." *Roberts v. Lisenbee,* 86 N. C., 136.

This principle was modified by the act of 1871-2 (Rev., 2105), so that the husband could only be held liable for torts committed while the husband was living with the wife, the statute providing that, "Every husband living with his wife shall be jointly liable with her for all damages accruing from any tort committed by her."

This statute has not been amended or repealed, and since its enactment it has been held that "a husband is liable for slanderous words spoken by his wife in his absence and without his knowledge or consent." *Presnell v. Moore,* 120 N. C., 390.

In the *Roberts case* the doctrine of the liability of the husband was adhered to notwithstanding the courtesy act of 1848, the provisions of the Constitution of 1868 vesting in her the separate estate, the marriage act of 1871-2, and other statutes, giving her many of the rights of a *feme sole,* all of which were considered, and the Martin Act of 1911, ch. 109, allowing her to contract in certain cases as if unmarried, and the act of 1913, ch. 13, giving to a married woman her personal earnings and any damages sustained by her for personal injuries, with the right to sue alone, simply add additional rights without changing the principle.

These later statutes do not purport to change or modify the earlier statute, fixing liability on the husband, and as all may well stand together, and are certainly not irreconcilable, it cannot be held that they operate as a repeal by implication.

No error.

CLARK, C. J., concurring: The common law was formulated before there was any Parliament, or when they were enacting very few statutes. It was created by judges who were for centuries Catholic priests only, and for centuries more they all were priests or laymen. It is not astonishing that under the influence of priests, who presumably knew little about such matters, it was laid down as a conclusive and irrebuttable presumption of law and fact that the wife acted solely under compulsion of her husband, and therefore that he was liable for her torts.

A great writer, who was far better posted on such matters, in the last century presents that when Mr. Bumble was told that he was responsible for his wife's conduct, and that "indeed he was the more guilty of the two in the eye of the law; for the law supposes that your wife acts under your direction." Mr. Bumble replied: "If the law supposes that, the law is a ass—a idiot. If that's the eye of the law, the law's a bachelor; and the worst I wish the law is that his eye may be opened by experience." *Oliver Twist,* ch. 51.

Priestly judges seem to have based their whole doctrine of the subjection of woman upon Genesis, ch. 2:23-24: "And the *man* said, this is now bone of my bone and flesh of my flesh; . . . they twain shall be one flesh." But this was not the declaration of God, but of Adam, and is not a fact, and yet upon that false foundation was built the theory of the common law which has persisted in the minds of some down to the present day, much to the detriment of women whose legal rights have been far inferior to those of women in other civilized countries, and even to those living in semi-civilized countries under the domination of the Koran.

Blackstone, who 160 years ago opened the first law school in England, was an intense reactionary, and in his Commentaries emphasized these views, saying that sons take precedence over daughters in rights of inheritance, because "the worthiest of blood shall be preferred." 2 Com., ch. 14; and, again, stated that the "very being or legal existence of woman is suspended during marriage, or at least is incorporated and consolidated into that of her husband." 2 Blackstone, ch. 15. This theory of merger of the personality of the wife is the source of all the legal degradation of women which it has taken so many years to conquer—and which indeed is not entirely eradicated yet.

From the false assumption of the person of the wife becoming a chattel of the husband has logically followed the premise that he had the right to chastise her, and that her personal property became his upon marriage, and "The husband hath herein an immediate, and absolute property devolved to him by the marriage, not only potentially but in fact, which never can again revert to the wife or her representative." 2 Black., ch. 29. And her realty became the property of her husband for his life, and there are further consequences, among them the anomalous "Estate by Entireties," which is a great injustice to her, but which it is held still exists notwithstanding the Constitution of 1868 vested women with absolute ownership of their property, as "if they were single." Then there is the provision still in our Code (C. S., 4225, 4339) that in trials for seduction and abduction the jury shall not take the testimony of the woman as true, even though they do believe her, unless she is corroborated; and this is still one of the few States in which the privy examination of the woman is still required in conveyances by her, and that in all dealings between the wife and her husband her contract is void unless reviewed and approved by some justice of the peace.

Long after most of the above doctrines were abandoned in England, *Pearson, C. J.,* in *S. v. Black,* 60 N. C., 263, reaffirmed the right of the husband to chastise the wife because it was his duty to "make her behave herself," and in *S. v. Rhodes,* 61 N. C., 455 (in 1868), *Reade, J.,* sus-

tained a charge of the court below that a husband had the right to whip his wife "without any provocation," stating, however, that the whole doctrine had been questioned in England, repudiated in Ireland and Scotland, and "had met with little favor elsewhere in the United States."

In view of the fact that in 1874, in *S. v. Oliver,* 70 N. C., 60, *Settle, J.,* repudiated the doctrine that the husband had the right to chastise his wife under any circumstances, saying simply, "We have advanced from that barbarism"; that the Martin Act, 1911, ch. 109, recognized the right of the wife to contract as if single (except with her husband), C. S., 2507, 2515; and the act of 1913, ch. 13, now C. S., 2513, under which the wife is entitled to recover her earnings and damages for torts, it would seem that all that part of the common law which is derived from the assumption of her being under the control of her husband should be deemed "obsolete" under the terms of our statute, 1778, ch. 133, now C. S., 970, which placed among the exceptions to our adoption of the common law all those provisions which have "become obsolete."

In view of the above provisions recognizing the equality of the wife with her husband as to her property and rights of person, and especially the recent amendment to the U. S. Constitution recognizing the equality of women at the ballot box, it would seem common sense had overcome the common law as to the inequality of the sexes, and that, as a correlative, the husband should no longer be held liable for the torts of the wife, committed without his knowledge or concurrence.

This would certainly be so if the principle rested upon the common law, because *"cessant ratione, cessat et lex."* But, as pointed out in the opinion of the Court, the act of 1872, ch. 193, now C. S., 2518, expressly provides that the husband "living with his wife shall be jointly liable with her for her torts." This is a modification of the common law under which the wife was not liable at all, and to that extent the doctrine is statutory, and the Courts have no choice but to declare it still in force until changed by statute.